**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Seymour EMALFARB, Defendant-
Appellant.**

No. 72-1207.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 11, 1973.

Decided July 2, 1973.

Rehearing Denied Aug. 6, 1973.

Certiorari Denied Dec. 3, 1973.
See 94 S.Ct. 571.

John Powers Crowley, Chicago, Ill.,
for defendant-appellant.

James R. Thompson, U. S. Atty., William T. Huyck, Glynna W. Freeman, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, Chief Judge, and KILEY and CUMMINGS, Circuit Judges.

SWYGERT, Chief Judge.

Defendant-appellant Seymour Emalfarb appeals, after a jury trial, his conviction on three counts of extortion in violation of 18 U.S.C. § 1951. He received concurrent sentences of three years in the Attorney General's custody: a ninety-day period confined to a jail-type or treatment institution with the remainder to be probation. He was also fined $5,000.

The defendant raises five issues on appeal: (1) the sufficiency of the evidence, (2) the trial judge's prejudicial comment to the jury that they would have no difficulty in determining the victim's state of mind, (3) the failure of the trial judge to give a missing witness instruction, (4) an erroneous instruction, defining reasonable doubt, and (5) the refusal of the trial judge to instruct on the defendant's theory of the case.

Defendant was the president, general manager, and salesman for Statewide Tire Company. The company was incorporated in 1959 by Emalfarb, Paul Powell, Clyde Choate, and C. W. Davis.[1] Statewide sold tires to the Illinois Tollway Commission in 1962, 1963 and 1964 for use on official cars. The defendant had frequent contact with the state police officers assigned to patrol the Illinois Tollways and was often seen at the headquarters.

Robert Schreiber, the victim of the alleged extortion owned his own trucking company in Hebron, Indiana. His company had about sixty trucks which carried sand and stone between Chicago and Gary, Indiana. Schreiber testified that the defendant called him in October 1966 and told him that he (Schreiber) had been running his trucks through Illinois for the last three years and "had not contributed to the Powell cause" and that he should pay $1,500 cash or buy 110 tires. Schreiber stated that he refused. Immediately after that telephone conversation, Schreiber's trucks were increasingly stopped and ticketed by Illinois state police. On November 9, 1966 the day after Paul Powell was elected Secretary of State in Illinois,[2] the defendant telephoned Schreiber and asked: "Are you ready to say uncle?" Schreiber proceeded to reduce by negotiation the requested $1,500 sum to $1,000. On the following day, November 10, 1966, Schreiber met the defendant at a motel parking lot. They went into the motel coffee shop and Schreiber gave the defendant $1,000 in cash. The defendant excused himself and made a telephone call. As he returned, a state police car drove away from the motel. The defendant in referring to the departing police car told Schreiber: "See what powers I have." After the exchange of money, Schreiber's trucks were infrequently ticketed. Schreiber in response to a later telephone call paid defendant another $500 in cash on December 5, 1966. A third payment of $500 in response to another call occurred on January 4, 1967 when Schreiber gave the manager of defendant's office a check payable to cash which the manager proceeded to cash. The manager did not remember what he did with the proceeds.

The defendant's defense is that these payments were Schreiber's voluntary contributions to Paul Powell's campaign funds in hope of receiving favorable licenses from the recently elected Secretary of State.

---

1. Powell transferred his stock in the company to Choate in 1964 for one dollar, but the formal change in registration of the stock did not represent a substantial change in economic interest.

2. Powell was formerly the Speaker of the Illinois General Assembly and Choate was a member of the Illinois General Assembly.

## I

The defendant argues that the evidence was insufficient to sustain a conviction since Schreiber's testimony that the harassment followed the initial telephone call by Schreiber is contradicted by the existence of a telephone call slip which indicated a phone call was made from defendant's Statewide Tire Company to Schreiber's company on October 27, 1966 and that Schreiber's trucks had received tickets on October 24 and October 26 prior to the telephone call of October 27th. There is no evidence as to who made or received the telephone call on October 27, 1966. The existence of a telephone call on October 27, 1966 does not refute Schreiber's testimony for there is no evidence of the parties to, or subject of, the call. This information about the telephone call of October 27, 1966 was evidence before the jury. The alleged contradiction was argued in defense counsel's summation. The jury apparently decided the credibility issue adverse to the defendant.

■ Defendant also argues that the Government failed to prove a connection between the defendant and the ticketing of Schreiber's trucks. The actual issue to be decided here was not whether the defendant had the power to have Schreiber's trucks stopped and ticketed but whether it was reasonable for Schreiber to believe that he had that power.

The evidence supports the jury finding that defendant was guilty on the three counts of extortion.

## II

■ Defendant argues that the trial judge erred in commenting to the jury on the possible inference to be drawn from Schreiber's testimony as to his state of mind after the telephone call by the defendant in October 1966. The record shows that the following occurred while Schreiber was being directly examined by the assistant United States Attorney:

Q. What did you interpret by this [telephone conversation]?

MR. CROWLEY: Objection.

THE COURT: Sustained.

Q. Well, what was your state of mind?

MR. CROWLEY: Objection.

THE COURT: Sustained. The jury is going to have to figure out what Mr. Schreiber's state of mind was from the conversation, and his testimony with respect thereto, and I don't think they will have much difficulty.

Defense counsel did not move to strike the trial judge's comments or to give the jury a cautioning instruction.

Although the trial judge's comment appears to be ambiguous, we do not think that the trial judge should have made such a comment since it was uncalled for and might have under other circumstances prejudiced the defendant's case. However, in this case, we believe that the comment was harmless error in light of the judge's later charges to the jury:

Let me lay a ghost to rest here if it seems appropriate. Sometimes jurors think the way to decide a case is to read the judge's mind and figure out how the judge would decide the case. They try to figure out from circumstantial evidence what the judge may have said, or how he looked, or what have you, what his verdict in the case would be.

Let me tell you, you couldn't read my mind if you tried. I have an unreadable mind, impervious skull my wife says, but I will save you the trouble. I will tell you what I think the verdict in this case should be.

It is my considered judgment that the verdict in this case should be what the 12 of you unanimously decide. That is it.

On the specific issue of Schreiber's state of mind, the judge's charge eliminated any possible prejudice to the defendant from his ambiguous but unfortunate comment. He stated:

You are not bound by the statements of either Mr. Schreiber or any of the

other people as to what his state of mind was. You can conclude from the evidence, all of the evidence, that in fact he couldn't reasonably have had that state of mind, or you may conclude from the evidence that he could reasonably have had the state of mind which he testified to. . . .

The defendant's cited authority dealing with a trial judge's comments on testimony and other evidence is not precedent for reversal in this case since the judge gave sufficient cautionary instructions. Moreover, his comments were ambiguous and did not directly express an opinion that Schreiber's testimony was worthy or unworthy of belief. United States v. Kwitek, 433 F.2d 18, 20 (7th Cir. 1970).

### III

■ Defendant argues that the trial judge erred in denying a missing witness instruction since the Government failed to call Trooper Lewandowski who issued a ticket to one of Schreiber's trucks on November 22, 1966. The theory of the Government's case was that between the threatening phone call of the defendant in October 1966 and the post-election telephone call on November 9, 1966, Schreiber's trucks were subjected to increased stoppings and tickets by the Illinois state police and that this harassment stopped after Schreiber gave the defendant $1,000. Lewandowski's testimony as to the circumstances concerning the ticket on November 22, 1966 was not relevant to the Government's theory. The ticket was only introduced to establish the infrequency with which Schreiber's trucks were stopped except during the harassment period. Lewandowski had no "special information relevant to the case." C. McCormick, Evidence § 249, at 534 (1954). The instruction was properly refused.

### IV

■ Defendant also challenges the instruction on reasonable doubt given by the trial judge over objection. The trial judge first stated:

Now, what do we mean by beyond a reasonable doubt? Well, a reasonable doubt is a fair doubt which arises from all of the evidence in the case. The law doesn't require, in fact, we know it is rarely possible to establish something to an absolute certainty, and that isn't what beyond a reasonable doubt means.

Beyond a reasonable doubt means the evidence be of such persuasion to you that you would be willing to rely upon that kind of evidence in making an important decision in your own personal lives. Presumably you would not make an important decision on evidence which was not, did not satisfy you beyond a reasonable doubt. Otherwise you are taking a calculated risk. You are gambling on something. Here you are not supposed to gamble on the guilt or innocence of the defendant. You are to find him innocent unless you are satisfied that his guilt has been established beyond a reasonable doubt.

He later summarized his instruction on "reasonable doubt":

Start out presuming the defendant to be innocent and the Government must prove his guilt beyond a reasonable doubt, which means by evidence of such persuasion that you would be willing to rely upon it in an important affair in your own life.

That part of the charge which is specifically attacked reads: "Beyond a reasonable doubt means the evidence be of such persuasion to you that you would be willing to rely upon that kind of evidence in making an important decision in your own personal lives." In support of his contention that this instruction was erroneous, the defendant cites Holland v. United States, 348 U.S. 121, 140, 75 S.Ct. 127, 138, 99 L.Ed. 150 (1954). There the Supreme Court in criticizing a similar instruction stated: "We think this section of the charge should have been in terms of the kind of doubt that would make a person hesitate to act . . . rather than the kind on which he would be willing to act." The Supreme Court,

however, did not reverse by reason of the criticized language contained in the definition of reasonable doubt. Similarly, a number of courts of appeals, following the observation in *Holland,* have indicated a preference for the "hesitancy to act" approach instead of the "willing to rely" formulation; but like the Supreme Court in *Holland* they have not seen fit to reverse cases in which the criticized language has been used. It must be pointed out, however, that some seem to have based their refusal on the fact that no objection had been raised during the trial and that invocation of the plain error rule was not in order. Scurry v. United States, 120 U.S.App. D.C. 374, 347 F.2d 468 (1965), cert. denied, 389 U.S. 883, 88 S.Ct. 139, 19 L.Ed. 2d 179 (1967); United States v. Restaino, 369 F.2d 544, 546 (3d Cir. 1966); United States v. Nuccio, 373 F.2d 168, 174 (2d Cir.), cert. denied, 387 U.S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 623 (1967); James v. United States, 416 F.2d 467, 475–76 (5th Cir. 1969), cert. denied, 397 U.S. 907, 90 S.Ct. 902, 25 L.Ed.2d 87 (1970); United States v. Dunmore, 446 F.2d 1214, 1221–1228 (8th Cir. 1971), cert. denied, 404 U.S. 1041, 92 S.Ct. 726, 30 L.Ed.2d 734 (1972); United States v. Cole, 453 F.2d 902, 906 (8th Cir.), cert. denied, 406 U.S. 922, 92 S.Ct. 1788, 32 L.Ed.2d 122 (1972); *cf.* United States v. Wright, 365 F.2d 135, 140 (7th Cir. 1966), cert. denied, 386 U.S. 918, 87 S.Ct. 879, 17 L.Ed.2d 789 (1967).

Considering the district court's instruction on reasonable doubt as a whole, we are constrained to find no reversible error here despite the fact that the defendant raised a timely objection to the charge as given. We are in general accord with Judge Friendly's observations in *Nuccio* that "While the 'hesitate' language makes the point considerably better and we wish trial judges would use it, we find it impossible to believe, in the absence of any evidence such as a request for further instructions, that jurors would retain such a nuance in their minds and be significantly influenced by it." Moreover, we are in agreement with the other circuits that have dealt with this problem in their admonition that in attempting a definition of reasonable doubt language phrased in terms of hesitancy to act is the preferred formulation. We expect the district judges in this circuit to do so.

## V

Finally, defendant argues that the trial judge refused to give his tendered instruction on the defense theory. The judge ruled that the defense theory had been given in another instruction. We agree and find that the instruction that he gave on coerced versus voluntary payments was the better instruction and that it included defendant's theory of the case. Defendant is not entitled to have a particular instruction, only to have the theory of his defense given. "Where the jury is fully and fairly instructed upon the case as a whole it is unnecessary to give any specific instruction in the precise form requested by the defendant." United States v. Pritchard, 458 F.2d 1036, 1040 (7th Cir.), cert. denied, 407 U.S. 911, 92 S.Ct. 2434, 32 L.Ed.2d 685 (1972).

The judgment of conviction is affirmed.