**UNITED STATES of America**

v.

**John G. PHILLIPS.**

**No. 83 CR 975.**

United States District Court,
N.D. Illinois, E.D.

March 15, 1984.

Scott Turow, Asst. U.S. Atty., Chicago, Ill., for United States.

Anton R. Valukas, Daniel R. Warren, Jenner & Block, Chicago, Ill., for Phillips.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Attorney John G. Phillips ("Phillips") was indicted by a federal grand jury on December 14, 1983, in a single count alleging attempted extortion under the Hobbs Act, 18 U.S.C. § 1951. Presently before the Court is Phillips' motion to dismiss the indictment or, in the alternative, to strike surplusage from the indictment. For the reasons set forth below, the motion is denied in its entirety.

### I.

The charge against Phillips arises from a conversation on July 14, 1982, between Phillips and another attorney, Charles Pressman ("Pressman"), relating to state court litigation entitled *Harris Trust & Savings Bank v. Siegel*, No. 76 CH 1405, and *Siegel v. Harris Trust & Savings Bank*, No. 76 L 4927 ("the *Siegel* case"). In 1976, Phillips had been appointed by the state court to act as guardian *ad litem*, and later as trustee, in the *Siegel* case. According to Pressman, Phillips stated during the July 14, 1982 conversation that a decision favorable to Pressman's client in the *Siegel* case could be obtained for $10,-000. Pressman and his law partners reported this conversation to state government authorities, and a federal grand jury investigated and indicted Phillips for attempted extortion.

Phillips first argues that his indictment must be dismissed for lack of federal jurisdiction. Extortion under the Hobbs Act "means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right," 18 U.S.C. § 1951(b)(2). However, the Hobbs Act does not reach every act of extortion or attempted extortion; federal

**1120**

jurisdiction is present only when the extortion "affects interstate commerce." 18 U.S.C. § 1951(a).

Phillips contends that the government cannot demonstrate a realistic probability that Phillips' alleged extortionate demand would have affected interstate commerce. Phillips bases his contention on some deposition testimony taken from Pressman on October 18, 1983. Phillips claims this testimony proves that he offered to pay the alleged extortionate sum himself, thus negating any likelihood that the assets of Pressman's law firm would be depleted or that interstate commerce would be otherwise affected.

Assuming *arguendo* that Pressman's deposition testimony could properly serve as a basis for dismissing the government's case without a trial, Phillips' contention is unpersuasive. Phillips relies on a very small part of Pressman's testimony to support his argument. Many of Pressman's other responses to inquiries by Phillips' counsel about the July 14, 1982 conversation contradict Phillips' version of the events and support the government's allegation that Phillips was seeking money from Pressman and his partners. Thus, unlike the defendant in *United States v. Ponto*, 454 F.2d 657 (7th Cir.1971) (en banc), Phillips has failed to establish beyond dispute a defense which requires dismissal of his indictment.[1]

## II.

■ Phillips also argues that the government will be unable to sustain a "wrongful use of fear" prosecution at trial. Phillips contends that the economic loss feared by Pressman and his law firm was an unfavorable verdict in the *Siegel* case, and that he did not in any way threaten to cause such a loss to occur. This argument also fails. Although the state court judge, rather than Phillips, would directly cause the apprehended loss in this case, Phillips is not necessarily relieved of liability under the Hobbs Act. In a number of cases, a de-

clared middleman between the victim and an public official has been prosecuted for wrongful use of fear of economic harm. *See, e.g., United States v. Gerald*, 624 F.2d 1291, 1299 (5th Cir.1980), *cert. denied*, 450 U.S. 920, 101 S.Ct. 1369, 67 L.Ed.2d 348 (1981); *United States v. Rosa*, 560 F.2d 149, 154 n. 5 (3d Cir.1977) (en banc), *cert. denied sub nom. Sica v. United States*, 434 U.S. 862, 98 S.Ct. 191, 54 L.Ed.2d 135 (1977); *United States v. Irali*, 503 F.2d 1295, 1299–1301 (7th Cir.1974), *cert. denied*, 420 U.S. 990, 95 S.Ct. 1424, 43 L.Ed.2d 670 (1975). In light of the suggestion that Phillips might influence the ultimate decision maker—the judge—Phillips' argument that he did not threaten to cause any loss is unavailing.

## III.

■ The government in its indictment alleges that Phillips attempted to extort money from Charles Pressman both by the wrongful use of fear of economic harm and under color of official right. Phillips asserts that the "under color of official right" charge is defective on its face because he is not a public official. In essence, Phillips contends that there are two mutually exclusive branches of the Hobbs Act: extortion through the wrongful use of force, violence or fear, which may be committed only by private individuals, and extortion under color of official right, which is reserved for public officials who exploit the trust which the public has reposed in them. The government argues that this bifurcation is unwarranted and that all four of the proscribed means of extortion apply to public and private actors alike. Based on the statutory language, the legislative history and the case law relating to extortion under the Hobbs Act, we find the government's position persuasive.

We begin our analysis with the statutory language. On its face, the Hobbs Act does not appear to contain any class limitations. As stated in Section 1951(a), it applies to *"Whoever in any way ... affects com-*

---

**1.** For the same reason, Phillips' claim that the government will be unable to prove the "obtain-

ing of property" element of 18 U.S.C. § 1951(b)(2) fails.

merce ... by ... extortion." (Emphasis supplied). This prohibition could not be phrased more broadly. As noted above, "extortion" is defined as obtaining another's property by "the wrongful use of ... force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). This list of the different means of committing extortion does not limit the statute's application to any particular categories of persons.

Nor does the phrase "under color of official right" apply only to legitimate office holders. To the contrary, "color" implies "an appearance, semblance, or *simulacrum*, as distinguished from that which is real ... a disguise or pretext." *Black's Law Dictionary* 240 (5th ed. 1979). Similarly, one definition of "color of office" is "pretense of official right to do an act made by one who has no such right." *Id.* at 241. Thus, the phrase "under color of official right" appears to apply not only to actual public officials but also to any person purporting to wield effective governmental power.

Such an interpretation of these words is supported further by a similar statute which existed when the Hobbs Act was passed in 1946. The statute, 18 U.S.C. § 171, prohibited extortion under color of office by federal employees or *others* who acted on the basis of "pretended or assumed" federal authority. The law, which had been first passed in 1906, 34 Stat. 546 (June 28, 1906) read as follows:

> Every officer, clerk, agent or employee of the United States, and every person representing himself to be or assuming to act as such officer, clerk, agent or employee, who, under color of his office, clerkship, agency, or employment, or *under color of his pretended or assumed office*, clerkship, agency, or employment, is guilty of extortion, and every person who shall attempt any act which if performed would make him guilty of extortion, shall be fined not more than $500 or

imprisoned not more than one year, or both. (Emphasis supplied).

Thus, long before the Hobbs Act became law, Congress had recognized that a private person could be prosecuted for extortion under color of an office that did not belong to him.

Under the common law, extortion was a crime which could be committed only by a public official. *E.g., United States v. Kenny*, 462 F.2d 1205, 1229 (3d Cir.1972), *cert. denied sub nom. Sternkopf v. United States*, 409 U.S. 914, 93 S.Ct. 234, 34 L.Ed.2d 176 (1972). However, in passing the Hobbs Act and related statutes, Congress intended to expand the reach of the common law notions of extortion to reach private conduct. *See United States v. Nardello*, 393 U.S. 286, 289, 89 S.Ct. 534, 536, 21 L.Ed.2d 487 (1969) (interpreting "extortion" in 18 U.S.C. § 1952). Therefore, we cannot assume that Congress meant to impose common law limitations on the Hobbs Act—especially when Congress in Section 171 had already proscribed extortion under color of office by public *and* private persons.[2]

The legislative intent behind the Hobbs Act also supports the conclusion that this statute was meant to have the broadest reach possible, without the limitations suggested by Phillips. The statute's legislative sponsors repeatedly emphasized that the purpose of the bill was to punish all forms of extortive conduct which affected commerce in any way. Representative Hobbs declared, when he introduced the bill on the floor of the House,

> This bill is grounded on the bedrock principle that crime is crime, no matter who commits it; and that robbery is robbery and extortion, extortion ... It covers whoever in any way or decree [sic] interferes with interstate or foreign commerce by robbery or extortion.

89 Cong.Rec. 3217 (1943).

In light of this and other broad proclamations of legislative intent, the courts have

---

**2.** *See also United States v. Sutter,* 160 F.2d 754, 756 (7th Cir.1947) ("There are no common law crimes within the jurisdiction of the Federal

Government. In the Federal jurisdiction crimes are defined by acts of Congress.")

long resisted attempts to limit the scope of the Hobbs Act. As the Seventh Circuit recently explained in *United States v. Jarrett,* 705 F.2d 198, 202 (7th Cir.1983),

> In *Stirone v. United States,* 361 U.S. 212, 215, 80 S.Ct. 270, 272, 4 L.Ed.2d 252 (1960), an extortion prosecution, the Court stated that the Hobbs Act "speaks in broad language, manifesting a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery or physical violence." Reaffirming this view in *United States v. Culbert,* 435 U.S. 371, 98 S.Ct. 1112, 55 L.Ed.2d 349 (1978) (extortion prosecution), a unanimous Supreme Court said:
>
>> the statutory language [of the Hobbs Act] sweeps within it all persons who have "in any way or degree ... affect[ed] commerce ... by robbery or extortion." ... These words do not lend themselves to restrictive interpretation; as we have recognized, they "manifest ... a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery or physical violence."
>
> *Id.* at 373, 98 S.Ct. at 1113.

Given such a sweeping declaration of legislative intent, this Court may assume that had Congress intended to exclude private persons from the reach of the official rights language of the Hobbs Act, it would "have said so in clear and understandable terms." *Russello v. United States,* —— U.S. ——, 104 S.Ct. 296, 302, 78 L.Ed.2d 17 (1983) (use by Congress of "profits" in forfeiture provision of 21 U.S.C. § 848(a)(2) indicated a like intent for scope of 18 U.S.C. § 1963(a)(1) where word did not appear, in light of broad purposes of latter statute and failure of Congress to indicate negative intent).

Finally, although they are not unanimous, decisions in cases which have dealt squarely with this question support the view that private persons can commit extortion under color of official right. The two judges within the Northern District of Illinois who have considered this issue have reached opposite conclusions. *Compare United States v. Freedman,* 562 F.Supp. 1378 (N.D.Ill.1983) (private persons *cannot* commit official rights extortion) *with United States v. Mattson,* No. 80 CR 477 (N.D. Ill. Jan. 15, 1981) (private persons *can* ), *rev'd on other grounds,* 671 F.2d 1020 (7th Cir.1982). Three other district courts have dealt with this issue, and all three have concluded that private persons could commit extortion under color of official right. *United States v. Lena,* 497 F.Supp. 1352, 1357 (W.D.Pa.1980), *aff'd without opinion,* 649 F.2d 861 (3d Cir.1981); *United States v. Furey,* 491 F.Supp. 1048, 1066–68 (E.D. Pa.1980), *aff'd without opinion,* 636 F.2d 1211 (3d Cir.1980), *cert. denied,* 451 U.S. 913, 101 S.Ct. 1987, 68 L.Ed.2d 304 (1981); *United States v. Barna,* 442 F.Supp. 1232, 1235 (M.D.Pa.1978), *aff'd without opinion,* 578 F.2d 1376 (3d Cir.1978), *cert. denied,* 439 U.S. 862, 99 S.Ct. 184, 58 L.Ed.2d 172 (1978). Although no court of appeals has treated this question at length, the Seventh Circuit affirmed the Hobbs Act conviction of a private citizen charged with extortion both by wrongful use of fear and under color of official right (just as Phillips is charged here) in *United States v. Emalfarb,* 484 F.2d 787 (7th Cir.1973), *cert. denied,* 414 U.S. 1064, 94 S.Ct. 571, 38 L.Ed.2d 469 (1973).

Several courts, including the Seventh Circuit in *Emalfarb,* have focused not on whether the defendant was a public official but on whether the extortion victim reasonably believed that the defendant was in a position to wield governmental power to the victim's detriment. *Id.* at 789, *see also United States v. Rabbitt,* 583 F.2d 1014, 1028 (8th Cir.1978), *cert. denied,* 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979); *United States v. Hathaway,* 534 F.2d 386, 394 (1st Cir.1976), *cert. denied,* 429 U.S. 819, 97 S.Ct. 64, 50 L.Ed.2d 79 (1976); *United States v. Price,* 507 F.2d 1349, 1350 (4th Cir.1974); *United States v. Irali,* 503 F.2d 1295, 1300–01 (7th Cir.1974), *cert. denied,* 420 U.S. 990, 95 S.Ct. 1424, 43 L.Ed.2d 670 (1975). This approach is preferable to the public official-private citizen distinction proposed by Phillips and is more

consistent with both the language and history of the Hobbs Act. Thus, we hold that even if Phillips is considered a private citizen with no public office, he can still be charged with extortion under color of official right.

■ Charging Phillips with extortion under color of official right is permissible for a second reason: his position as a guardian *ad litem* placed him in at least a quasi-official capacity. Although Phillips did not have the authority or responsibilities of some public officials, his job was created by state law and entailed prescribed duties. He was appointed by the court and his fee came only with the court's permission. Perhaps most importantly, his appointment could well be regarded as a badge of affinity with the court, a state-created position with some degree of official influence and power. It was the abuse of precisely this kind of power, actual or apparent, that the Hobbs Act was meant to control.

Analogous to this case is *United States v. Senak*, 477 F.2d 304 (7th Cir.1973), *cert. denied*, 414 U.S. 856, 94 S.Ct. 157, 38 L.Ed.2d 105 (1973). Senak was charged with violating 18 U.S.C. § 242 for demanding side payments from indigents he represented as their public defender. Like Phillips, Senak was court-appointed and paid, and he worked on a case by case basis and was not a regular state employee. *Id.* at 305 n. 2, 307. Like a guardian *ad litem*, Senak was expected to pursue only the private interests of his client. Based on these facts, the Seventh Circuit held that Senak might be found to have acted "under color of law."[3] *Id.* at 308.

Thus, the government could charge Phillips with extortion under color of official right, both as a private individual and as a guardian *ad litem*.

---

For the foregoing reasons Phillips' motion to dismiss the indictment is denied.

These same reasons require that none of the language of the indictment should be stricken as surplusage at this time. Therefore Phillips' motion to strike is denied as well,[4] without prejudice to renew this motion at trial, if appropriate. Finally Phillips has requested the Court to conduct an evidentiary hearing on the factual issues raised in his motion to dismiss and to strike, in the event that his motion is denied. However, such a hearing would be neither helpful nor appropriate. The government will be required to prove beyond a reasonable doubt the elements of its charge at trial. Phillips will have an adequate opportunity at such time to contest the factual basis for the government's charges. Accordingly, Phillips' motion is denied in its entirety. It is so ordered.

**3.** Contrary to Phillips' suggestion that Senak is no longer good law, the Supreme Court expressly recognized its vitality in *Polk County v. Dodson*, 454 U.S. 312, 325 n. 19, 102 S.Ct. 445, 453 n. 19, 70 L.Ed.2d 509 (1981).

**4.** Whether it would have been more prudent for the government to separate the "economic harm" and "under color of official right" extortion charges in two different counts of the indictment is a matter which we will all know after the Court of Appeals has considered these questions should there be a conviction.