UNITED STATES of America

v.

Alphonse C. GONZALES, Defendant.

No. 84 CR 248.

United States District Court,
N.D. Illinois, E.D.

Oct. 16, 1985.

Scott R. Lassar, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

Thomas D. Decker, Thomas D. Decker & Associates, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

This case will, apparently, proceed to trial on the fifth indictment. While the parties dispute, as a side matter, why this is so, the fact is that the passage of time has largely destroyed some defense contentions and vindicated others. The government response to the latter has been to recast charges in a superceding indictment. We are thus faced with issues relating to the present indictment in light of the present state of the law. We are also faced with a number of motions and issues raised with respect to the first indictment and still to be determined, and their resolution re-quires a selective use of memoranda previously filed. There are, as well, new motions and new contentions. The process has generated massive and meticulously researched memoranda, and the last briefs have yet to be filed. Time constraints do not permit this court to deal with the many issues in anything like the detail in the various submissions. Given those constraints, the following is a resolution of all pending matters, as best as we can determine.

### 1. Motions to dismiss count one.

Because of the changes in count one in the fifth indictment, ruling on one aspect of the motion to dismiss is reserved until further briefing is completed.

■ The other dispute about count one is whether a private citizen's taking of money for the ostensible purpose of using it to influence the conduct of a public official is bribery within the ambit of RICO. The government suggests that a law license makes defendant a public official, but that goes too far. The defendant contends that receipt of money by a private citizen ostensibly for the purpose of paying off public officials may be bribery under Illinois law but is really theft by deception and not generic bribery for RICO purposes, absent proof that the citizen did pay, or intended to pay, the monies to a public official. This court disagrees. The state label for proscribed conduct, as defendant contends, is not itself the answer. As Judge Shadur pointed out in *United States v. Kaye*, 586 F.Supp. 1395 (N.D.Ill.1984), however, the generic meaning of bribery focuses on the intent of the briber to influence official action. A scheme to obtain intended bribes, even if there is no intention to carry through, is an assault on the integrity of official action different in kind from simple theft by deception and, this court believes, within the ambit of bribery as a predicate offense within RICO. That distinction is not lessened because the ostensible intermediary is a private citizen rather than a public official.

### 2. Motion to dismiss count two.

■ In count two the government charges a section 1962(a) violation of RICO, alleging that the defendant used racketeering income in his sole proprietorship. Defendant attacks that count on the same basis as count one, including the contention that the predicate acts are not bribery for RICO purposes, and with like effect. In addition, defendant argues that section 1962(a), like section 1962(c), requires that the defendant cannot be the enterprise. Assuming that count two does charge that the defendant is the enterprise, the argument founders nonetheless. The Court of Appeals in *Haroco, Inc. v. American National Bank & Trust Co. of Chicago*, 747 F.2d 384 (7th Cir.1984), *aff'd on other grounds*, ─── U.S. ───, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985), concluded that section 1962(a) did not require that the liable person and the enterprise be separate. Although defendant is technically correct in describing that conclusion as *dictum*, that conclusion was a considered judgment relied upon to support the court's interpretation of section 1962(c). More recently, *United States v. DiCaro*, 772 F.2d 1314 (7th Cir.), adhered to that reasoning. Dicta those conclusions may be, but they clearly are the settled law in this circuit.

■ Defendant also contends that count two is fatally deficient because the money in three of the four payments came from the F.B.I. and therefore were not "dirty" funds obtained from a pattern of racketeering activity. Count two charges, among other things, that the F.B.I. agent paid money to defendant to be used to pay bribes. The "other things" charged is receipt of money for bribes from a person not an agent and an actual bribe payment to a public official. Only the former is germane to the count two charge, and one receipt is not a pattern. This court believes, however, that F.B.I. payments can constitute income derived from a pattern of racketeering activity so long as the payor had the intention or understanding specified in Ill. Rev.Stat. ch. 38, ¶¶ 33–1(d) or (e). The assault on the integrity of official action is a harm flowing from the receipt or solicitation, not very dissimilar from extortion under the Hobbs Act from an agent participating in a sting operation. *See United States v. Blackwood*, 768 F.2d 131 (7th Cir.1985). The charge is that the payments were made as "dirty" money and received as such. That is sufficient underpinning for the pattern of racketeering claim, and count two goes on to allege that the monies were used in the enterprise. And that is enough. The motion to dismiss count two is denied.

### 3. Motion to dismiss counts three through five.

Count three charges Hobbs Act violations, alleging that defendant "knowingly did attempt to affect commerce" by seeking money from an F.B.I. agent for payoffs to public officials to influence the disposition of an armed robbery case against Donna Kuster, "which money was sought from or on behalf of" the agent and Kuster, with their consent, "said consent being induced under color of official right and by the wrongful use of fear. . . ." Count four makes a similar charge respecting a probation revocation proceeding against Kuster. Count five also charges Hobbs Act extortion, that count charging both a knowing attempt to affect, and an effect on, interstate commerce, and relating to obtaining a driver's license in a false name, the consent of the agent "being induced under color of official right." Defendant moves to dismiss those counts on the ground that the alleged conduct had no objective "realistic probability" of an effect upon interstate commerce and that, accordingly, there is no jurisdictional basis for a federal offense.

The parties have set forth in their memoranda the expected factual basis for jurisdiction. While the counts, as a pleading matter, sufficiently allege effect on commerce, the factual development by memoranda permits the court to address the jurisdictional issues. *See United States v. Freedman*, 562 F.Supp. 1378, 1381 fn. 7 (N.D.Ill.1983). Defendant contends that the F.B.I. agent, although he posed as an

interstate drug trafficker, never established even the bare bones of such an enterprise, and that, therefore, even if the funds were assumed to be his for purposes of interstate commerce analysis, their depletion could have no effect on interstate commerce. The government responds by resting on several theories. It argues that the funds actually came from the F.B.I. in Washington, D.C., and that the F.B.I. is a business engaged in the purchase of goods in commerce; that various expenses resulting from the investigation required the purchase of goods and services in or related to interstate commerce; that defendant, whose assets were increased, was engaged in interstate commerce; and that, in any event, if the agent had been who he purported to be, he would have been involved in interstate commerce through the narcotics organization with which he was ostensibly associated.

Defendant's response to those theories is voluminous and lends considerable support to the notion that judicial consideration of interstate commerce in federal sting operations borders on the metaphysical, but, invariably, ultimately sustains federal jurisdiction on one ground or another. The most direct basis for that result is that a fiction becomes reality for the purpose of analysis. A fictitious law firm is treated as a real economic entity whose assets are depleted by extortionate payments. *United States v. Murphy*, 768 F.2d 1518 (7th Cir.1985). A fictitious narcotics organization is benefitted by such payments. *See United States v. Ambrose*, 740 F.2d 505 (7th Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 3479, 87 L.Ed.2d 614 (1985). There is, in those situations, an objectively realistic probability of an effect upon interstate commerce if the victim (here an individual acting for an enterprise) were what he purported to be. The nexus with interstate commerce is not the extortioner's subjective belief but the victim's purported identity, and it matters not whether that identity was fleshed out by specific expenditures of goods and services directly or indirectly in interstate commerce, although

there were here, or so the government represents, some such purchases.

This court does not mean, by avoiding an extended analysis of the various cases cited by the parties and the intellectual convolutions they suggest, that the path to a conclusion in a case such as this is straight, wide and clear. Rather, it is persuaded that the path leads, ultimately, to the conclusion reached here (and which this court followed in the *United States v. Blackwood* jury instructions) that the reasonably probable impact upon the purported victim is controlling. That does not, by any means, federalize all extortion law. It does recognize that federal law enforcement can, through sting operations, bring extortion within the ambit of the Hobbs Act. The federal involvement in a real sense creates the federal concern by creating a purported victim who, if he existed and was extorted, would implicate interstate commerce concerns (and, conversely, the federal law enforcement concern as a practical matter leads to the federal involvement) and, thereby, in those circumstances, gives a reach to federal law it otherwise might not have. That power is, however, not denied by the defendant. He recognizes that a sting operation with the proper window dressing, *e.g.*, the dummy law firm with an office and stationery, is sufficient. This court does not believe that the adequacy of the window dressing is the ultimate basis for the various decisions upholding federal jurisdiction.

Those counts stumble, however, on the concept of official right. Defendant contends that, in the absence of an official position, he cannot be properly charged with a Hobbs Act extortion "under color of official right." The government argues that the reach of the statute extends to the perceived insider who, the victim reasonably believes, can influence official action. Few cases directly deal with the issue, although several arguably lend support to one view or the other, *e.g.*, *United States v. Emalfarb*, 484 F.2d 787 (7th Cir.), *cert. denied*, 414 U.S. 1064, 94 S.Ct. 571, 38 L.Ed.2d 469 (1973). Two cases which do directly deal with the issue are *United*

*States v. Phillips,* 586 F.Supp. 1118 (N.D. Ill.1984) and *United States v. Freedman,* 562 F.Supp. 1378 (N.D.Ill.1983), and they reached opposite conclusions. Judge Aspen, in *Phillips,* held that private actors could be subject to "color of official right" prosecution; Judge Shadur, in *Freedman,* concluded that they could not.

■■■ The Hobbs Act reaches beyond common law. Extortioners who pretend to exercise official power act under color of official right. Nor need there be *de jure* ability to perform the promised act if the victim reasonably believes that "the power in fact of the defendant's office included the effective authority to fulfill the promise." *United States v. Rindone,* 631 F.2d 491, 495 (7th Cir.1980), *quoting United States v. Mazzei,* 521 F.2d 639, 643 (3d Cir.), *cert. denied,* 423 U.S. 1014, 96 S.Ct. 446, 46 L.Ed.2d 385 (1975). Perhaps the concept of official right extends to statuses clothed with some indicia of governmental power, such as guardians *ad litem* and precinct captains. But here the government concedes that its proof would go no farther than establish defendant as an attorney, a private actor, with a perceived corrupt relationship with governmental officials. To define that relationship as action "under color of official right," in the absence of any supportive legislative history, stretches, in this court's judgment, the statutory language beyond the breaking point. The coercion leading to the extortion must flow from perceived official power; it is not enough that a private actor may be able or, rather, be perceived as being able, to induce another to abuse his official power. For that reason the motion to dismiss count five and to strike from counts three and four the references to color of official right is granted.

### 4. Motion to dismiss counts three and four.

■■■ Defendant contends that counts three and four are in their entirety defective because they charge not only the attempted extortion of the F.B.I. agent, the purported victim, by the wrongful use of fear, but also make the state of mind of a non-victim, Donna Kuster, an integral part of the offense. The government agrees that the state of mind of a non-victim is immaterial, but argues that the defendant misreads the indictment. The language is not a model of clarity but it is capable of bearing the interpretation the government places upon it—that the agent acted on behalf of Kuster, that therefore in giving his consent he was giving hers as well, and that the consent given by the agent was induced by the wrongful use of fear. If read as the defendant suggests, the grand jury merely found probable cause to believe more than was necessary for a Hobbs Act offense. The motion to dismiss for that reason is denied.

The other basis for dismissal of those two counts is that they are too vague because they refer only to wrongful use of fear, without elaboration. But that allegation is sufficient, particularly in the context of a case in which extensive tapings of the actual contacts between the agent and defendant have been made available to defendant.

### 5. Motion to dismiss count eight.

■■ Count eight charges defendant with filing a fraudulent tax return for 1982. The alleged falsity is in "an accompanying attachment" in which defendant falsely claimed that he had filed 1980 and 1981 returns, which returns showed overpayments. Defendant moves to dismiss on the ground that the accompanying attachment was a note which was not part of his return for the purposes of 26 U.S.C. § 7206(1). The government largely rests upon *United States v. Sun Myung Moon,* 532 F.Supp. 1360 (S.D.N.Y.1982), *aff'd in part and rev'd in part,* 718 F.2d 1210 (2d Cir.1983). In that case a false explanation of source of income was a basis for a section 7206(1) prosecution because, in the absence of a W–2 form, it became part of the return itself. From this the government reasons that any schedules or other documents attached to and submitted as a

part of the return are indictable under section 7606(1) if knowingly false.

This court agrees with the concept and, indeed, the defendant does not really dispute it, but it somehow begs the question. The issue is whether or not such a note is a submission as part of the return. Defendant claims that it is not because it is unnecessary to the tax computation; it does nothing to aid in a determination of tax liability and only relates to the payment of that liability. He compares the submission of the note to submission of a bad check. But that analogy does not help defendant. If there is a tax liability, payment is required, and a check is as much a part of the return as a W–2 form. A libelous statement about the Commissioner of Internal Revenue could not lead to a section 7206(1) prosecution, but that is unrelated to the determination and collection of tax liabilities. The alleged note is so related. It is one of the bundle of documents upon which the IRS is expected to rely, and it is the rare taxpayer who would think that he can be criminally liable for falsifying information relating to liability but not for falsifying information relating to payment and furnished with the return. The motion to dismiss is denied.

### 6. Motion to dismiss count ten.

■ Count ten charges defendant with committing perjury on March 7, 1984, before the grand jury. Defendant contends that the government knew the answers he was going to give, having heard them several times before, and that the only purpose of eliciting the testimony was to obtain a perjury charge. He moves to dismiss.

The grand jury transcript establishes that the defendant was advised of his Fifth Amendment rights and that false answers could lead to perjury charges. He was specifically given the option of not testifying at all and told that he should testify only if he chose to do so. His options, then, were to leave without testifying, to invoke the privilege, to testify truthfully or to lie. The government has charged that

he did the last. The questions asked were material to the investigation. To no one's surprise, including the government, defendant's answers were the same as they had been several times in the past. It is in those circumstances that defendant moves to dismiss. That motion is denied.

Abuses by congressional committees in acting as criminal investigators, without legitimate legislative purpose, have caused courts to find that the inquiry was into immaterial matters and thus the responses could not be the basis for perjury prosecutions. *United States v. Cross*, 170 F.Supp. 303 (D.D.C.1959); *United States v. Icardi*, 140 F.Supp. 383 (D.D.C.1956). The same result has been reached when a grand jury inquired into matters not within its competence. *Brown v. United States*, 245 F.2d 549 (8th Cir.1957). There are, in those cases, clear concerns about the fairness of seeking testimony when the real purpose was in all likelihood the perjury indictment which followed—a concern which was the basis of the ruling concerning an administrative inquiry in *United States v. Thayer*, 214 F.Supp. 929 (D.Col.1963).

Those concerns are far less manifest here. The inquiry was material to the investigation. Indeed, defendant was expressly told that he was the subject of the investigation, that he could be charged with perjury if he lied, that he could invoke the privilege, that he could leave to consult an attorney, that an attorney could be appointed, that he need testify only if he chose to do so and could leave without ever invoking the privilege, and that the questions would be similar to those previously asked which related to his conduct. While the story of the conversion of Saul on the road to Damascus perhaps lives on partly because genuine conversions are so uncommon, there was nothing inherently unfair in the government obtaining the defendant's testimony in the circumstances presented here. It was not inconceivable that, under oath for the first time, defendant would testify as the government apparently believed the truth to be, and its case would be certain. If in fact he lied under oath, as

the government charges, he cannot be insulated from a perjury charge solely because he said what the government anticipated he probably would say. Defendant had non-coercive options and he was fully warned. If he, an attorney, chose to lie, that was his decision, and the government can compel him to answer for the consequences.

The motion to strike certain paragraphs is denied, consistent with the court's rulings on the RICO count.

### 7. Motion to strike paragraphs 3(b) and 4(b) of count ten.

The motion to strike is denied. The government represents that it can and will prove that defendant had the ability to obtain driver's licenses in false names and that he often said as much. That he could not do so without the assistance of others does not invalidate the charge if he had the ability to obtain that assistance and, in common parlance, he therefore did have the ability to obtain such licenses and, if, further, the jury is persuaded beyond a reasonable doubt that he was intentionally lying when he denied that ability.

### 8. Motion to sever counts.

■ Defendant's motion to sever the RICO and Hobbs Act counts from the tax and tax-related charges is denied. This court is persuaded that the likely overlap of evidence is considerable and possible prejudice to defendant is inconsiderable, and that there is, if not a direct logical relationship between all counts, at least a logical interrelationship among the various counts.

### 9. Motion for disclosure of grand jury transcript.

Defendant's showing of particularized need is tenuous at best. The government has, however, submitted the pertinent transcript to the court *in camera*, and a review of that transcript establishes that defendant's supposition of what happened (or, more accurately, what didn't happen) is unfounded. The motion is, therefore, denied.

### 10. Motion for immediate disclosure of favorable evidence.

Defendant long ago sought any favorable evidence; the government responded that it is mindful of its obligations and had produced all such evidence it was obligated to produce or would do so (relating to the credibility of government witnesses) shortly before trial. That is all this court can compel. In the interests of an orderly trial this court requests, although it cannot command, the government to furnish 3500 material at least two days before the witness to whom it pertains testifies. For that same reason the court directs the parties to furnish lists of probable witnesses to each other a week before trial and to advise the other party, in a reasonable fashion, of their order of appearance, and any changes in witnesses and their order of appearance, as it is determined.

### 11. Motion for an order requiring the government to notice of its intention to use certain evidence.

In response to that motion the government advised of its intention to use evidence of two specific matters. The defendant then indicated that the information provided was too sketchy to be of use in preparing a defense. The court is, however, unaware as to what information was provided, other than that the government represented to defendant that documents relating to those matters were available for inspection. Absent further showing by defendant, this court will not order further discovery.

With respect to possible cross examination or rebuttal, the government has no obligation to make a present disclosure. If it should then wish to use such evidence, it should so advise the court and defendant's counsel prior to seeking its introduction, in order that any motion *in limine* can be timely presented.

### 12. Motion for a bill of particulars.

Defendant has filed two motions for a bill of particulars. The second is far more

encompassing than the first. Given the extensive production of 302s and tapes, and the through argument of theories in the various briefs, this court sees no real need for a formal bill of particulars, with one exception: the government is directed to describe the type of "fear" "wrongfully use(d)" in counts three and four.