798 F.2d 1416
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Freddie Lee McCALEB, Defendant-Appellant.
 No. 85-3715.
 United States Court of Appeals, Sixth Circuit.
 July 18, 1986.
 
 Before KENNEDY and MILBURN, Circuit Judges, and PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-Appellant, Freddie McCaleb, appeals from his conviction of bank robbery. 18 U.S.C. S 2113(a). His two allegations of error are:(1) that the District Court erroneously permitted the government to introduce involuntarily obtained statements against McCaleb in violation of his fifth amendment right against self-incrimination; and (2) that the District Court erred in its "reasonable doubt" instruction to the jury. We hold that it it was error to admit the incriminating statements, the error was harmless. We also hold that the District Court's instructions did not misstate the meaning of "beyond a reasonable doubt." Accordingly we affirm McCaleb's conviction.
 
 I.
 
 2
 The offense of which McCaleb was convicted, unarmed robbery of a branch of Bank One, in Cleveland, Ohio, was comnmitted on October 15, 1994. On the morning of October 19, 1984, two F.B.I. agents arrested McCaleb and obtained incriminating statements from him (1) at the time of the arrest, (2) in the agents' car on the way to the F.B.I. office, and (3) at the F.B.I. office itself. McCaleb claimed at a pre-trial suppression hearing-and continues to cigim now-that the statements were made involuntarily due to the fact that at the time McCaleb made the statements he was under the influence of Percodan, a narcotic drug.
 
 
 3
 The District Court held a suppression hearing on June 18, 1985. The government presented one of the arresting agents, John Kirkland, as its witness, and the defense countered with testimony from McCaleb and Dr. Richard Schmidt of the Case Western Reserve University School of Medicine. Kirkland testified about the events leading up to and following McCaleb's incriminating statements; McCaleb did the same and also testified about his mental condition and frame of mind at the time; and Dr. Schmidt testified about the effects of Percodan and answered hypothetical questions based on the testimony of Kirkland and McCaleb.
 
 
 4
 After hearing the testimony and listening to argument from both sides' counsel, the District Court denied McCaleb's motion to suppress. The court took notice of, and apparently credited, Kirkland's testimony that during the car ride to the F.B.I. office McCaleb seemed rational, he knew what he was being told, his eyes were not bloodshot, and he had no speech impediment. The court also noted that McCaleb was knowledgeable enough to ask for the opportunity to make a phone call before signing a statement, and that he eventually refused to sign it. The court found that the request for a phone caH showed a capacity to understand.
 
 
 5
 The fifth amendment contains a privilege against self-incrimination. In Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme Court recognized that custodial interrogations, by their very nature, generate "compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." Id., 394 U.S. at 467; see also Moran v. Burbine, 106 S. Ct. 1135, 1140 (1986). Miranda requires the police, when initiating questioning in custody, to inform the accused of his various rights to remain silent and to have counsel present if he so desires. Miranda also requires the police to respect those rights when asserted by the accused.
 
 
 6
 McCaleb does not contend that the police failed to follow the requirements set forth in Miranda and related cases. See, e.g., Edwards v. Arizona, 451 U.S. 477, reh'g denied, 452 U.S. 973 (1981). Rather, his claim is that he did not "voluntarily, knowingly and intelligently," see Miranda, 384 U.S. at 444, waive the rights conveyed in the Miranda warnings. McCaleb claims that due to his consumption of Percodan shortly before he made the incriminating statements, those statements were not "the product of a rational intellect and a free will." See Townsend v. Sain, 372 U.S. 293, 307 (1963) (quoting Blackburn v. Alabama, 361 U.S. 199, 208 (1960) ).[1]
 
 
 7
 We decline to address the merits of McCaleb's argument, because we are convinced, based on our examination of the record, that if there was error, it was "harmless beyond a reasonable doubt." See Chapman v. California, 386 U.S. 18, 24 (1967). Although the Supreme Court has often stated that the introduction into evidence of coerced confessions can never be harmless, see, e.g., Connecticut v. Johnson, 460 U.S. 73, 81 (1983), this court has held that such a rule does not apply where the confession is not the product of police misconduct. See Murphy, 763 F.2d at 210.[2] McCaleb conceded at oral argument that Murphy permits us to inquire into whether the alleged error in this case is harmless.
 
 
 8
 The case against McCaleb was such that we can say, beyond a reasonable doubt, that the jury would have convicted him if the incriminating statements had not been allowed into evidence. The robbery occurred on October 15, 1984. The evidence showed that a black male entered the bank between 10:30 and 11:00 a.m., approached Elizabeth Grubach, a teller, and gave her a note demanding money. Ms. Grubach testified that she gave the robber packets of money, one of which contained an exploding red dye pack. The jury heard testimony that such packs are electronically detonated when carried out of the bank and that they spray red dye and tear gas. Terence Huff, a security guard at an arcade nearby testified that between 10:30 and 11:00 on that same day, a black male ran through the arcade with red smoke and tear gas pouring out from under his coat. Sheila Taylor, a teller at another branch of Bank One, testified that the next day, October 16, 1984, a black male entered the bank and asked her if she could exchange twenty red-stained ten dollar bills for unstained bills.[3] She brought the bills back to her manager, because she remembered that another branch of the bank had been robbed the day before, and when she returned to her teller station two or three minutes later, the man had left. While he stood at the counter, however, a surveillance camera took his picture.
 
 
 9
 Ms. Grubach testified that when she was shown the surveillance camera photo within a couple of days of the robbery, she recognized the man in the photo as the one who robbed her.[4] Ms. Taylor testified that the Man in the photo was the man who tried to exchange money and that she picked a photo of McCaleb out of a spread of six photos as that same man, She identified McCaleb at trial as the man who tried to exchange money. Mr, Huff testified that, when shown the spread of six photos, he picked that of McCaleb as the person who most resembled the one who ran by him with red smoke and tear gas streaming out of his jacket. He also stated that upon seeing the surveillance camera photo, he recognized the man in the photo as the one who ran by him. At trial he identified McCaleb as the man who ran by him.
 
 
 10
 In addition to the strong identification testimony, and the jurors' ability to evaluate the surveillnance camera photo, the government produced a medical record from a local hospital[5] that showed McCaleb had sought and obtained treatment the morning of October 16, 1984, for a burn on the palm of his right hand. An F.B.I. agent testified that an exploding red dye pack will produce burns upon contact. The surveillance picture taken at the bank showed that the man who attempted to exchange money had a bandage on his right hand. Finally, the government introduced over $350.00 in red-stained bins that McCaleb was carrying when arrested on October 19, 1984. The record as a whole reveals that if there was error with respect to the introduction of McCaleb's incriminating statements, that error was harmless beyond a reasonable doubt.
 
 II.
 
 11
 McCaleb's second allegation of error is that the court gave an improper "reasonable doubt" instruction. The District Court, as part of its instructions to the jury, stated:
 
 
 12
 The law does not require a defendant to prove his innocence or produce any evidence at all, and no inference whatever may be drawn from the election of the defendant not to testify.
 
 
 13
 The Government has the burden of proving him guilty beyond a reasonable doubt and, if it fails to do so, you must acquit him.
 
 
 14
 Thus, while the Government's burden of proof is strict or a heavy burden, it is not necessary that the defendant's guilt be proved beyond aU possible doubt. It is only required that the Government's proof exclude any reasonable doubt concerning the defendant's guilt.
 
 
 15
 A reasonable doubt is a real doubt based on reason and common sense after a careful and impartial consideration of all the evidence in the case.
 
 
 16
 Proof beyond a reasonable doubt, therefore, is proof of such a convincing character that you would be willing to rely and act upon it without hesitation in the most important of your own affairs.
 
 
 17
 (App. 189-90).
 
 
 18
 McCaleb's primary complaint about this instruction is that it equates reasonable doubt with a willingness to act rather than equating it with a hesitancy to act. He cites cases from other circuits for the proposition that the instruction should be framed in terms of a hesitancy to act and not a willingness to act. See, e.g., United States v. Cole, 453 F.2d 902, 906 (8th Cir. 1972). The District Court, however, did invoke the concept of hesitancy to act. We see no difference between the kind of doubt "which would cause a reasonable person ... to hesitate in taking an important step in some serious matter in his own private affairs," United States v. Prince, 515 F.2d 564, 566 n.1 (5th Cir. 1975), and proof you would be willing to rely and act upon "without hesitation in the most important of your own affairs."[6]
 
 
 19
 McCaleb also complains about the use of illustrations in the reasonable doubt instruction, but, as just noted, other circuits approve of the particular analogy used in these instructions.
 
 
 20
 We affirm.
 
 
 
 [1]
 The Supreme Court has noted that when a confession is brought about by the effect of a "truth serum," it is neither the product of a free will nor voluntarily given. See Townsend, 372 U.S. at 307-08
 It is difficult to imagine a situation in which a confession would be less the product of a free intellect, less voluntary, than when brought about by a drug having, the effect of a "truth serum." It is not significant that the drug may have been administered and the questions asked by persons unfamiliar with hyoscine's properties as a "truth serum," if these properties exist. Any questioning by police officers which in fact produces a confession which is not the product of a free intellect renders that confession inadmissible.
 Id. (emphasis in original; footnotes omitted). As the Court indictated, the lack of improper purpose on the part of the questioning officers does not make the confession any more voluntary or the product of a free intellect. See also United States v. Murphy, 763 F.2d 202, 208 (6th Cir. 1985), cert. denied sub nom. Stauffer v. United States, 106 S. Ct. 812 (1986),
 
 
 [2]
 This Court noted in h that the Supreme Court has applied a harmless error test even where the co n was obtained involuntarily by a policeman posing as a cell mate. See Milton v. Wainwright, 407 U.S. 371 (1972)
 
 
 [3]
 She testified that the man told her he had spilled red paint on the money
 
 
 [4]
 Grubach was not permitted to make an in-court identification because of an impermissibly suggestive photo array incident that occurred after she identified McCaleb in the surveillance photograph
 
 
 [5]
 The hospital (Huron Road Hospital), the bank where the black male attempted to exchange money, and McCaleb's home are an within close proximity of each other
 
 
 [6]
 None of the cases cited by McCaleb resulted in reversal of a conviction on the ground that the instruction dealt with willingness to act instead of hesitancy to act. See, e.g., United States v. Emalfarb, 484 F.2d 787, 790 (7th Cir. 1973), cert. denied, 414 U.S. 1064 (1973); Cole, 453 F.22d at 906. In fact, most of the cases cited don't even deal with this particular issue