**UNITED STATES of America, Plaintiff,**

**v.**

**Morgan FINLEY, et al., Defendants.**

**No. 87 CR 364.**

United States District Court,
N.D. Illinois, E.D.

Nov. 29, 1988.

James Holloway, Federal Defender Program, Sulzer & Shopiro, Chicago, Ill., for John Adams.

Glenn Gutsche, Chicago, Ill., for Melvin Dubrock.

Louis Garippo, Susan G. Feibus, Chicago, Ill., for Morgan Finley.

Clinton Sims, Chicago, Ill., for David Hammond.

Keith Spielfogel, Robert S. Bailey, Chicago, Ill., for Marian Humes.

Donald Bertucci, Federal Defender Program, Chicago, Ill., for Perry Hutchinson.

Lewis Myers, Federal Defender Program, Chicago, Ill., for Charles Knox.

William Martin, Oak Park, Ill., for Michael Lambesis.

Philip Parenti, Chicago, Ill., for Clarence McClain.

Ira Raphaelson, Michael Shepard, U.S. Atty.'s Office, Chicago, Ill., for U.S.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

### I. INTRODUCTION

On May 14, 1987, the federal government filed an indictment against nine defendants in connection with the FBI's "Operation Incubator" investigation into corruption in the awarding of various collection contracts by the City of Chicago. The defendants are Morgan Finley, Clerk of the Circuit Court of Cook County; Michael Lambesis, a former Chicago police officer and the former chief investigator of the Clerk's office; Clarence McClain, a former City of Chicago official; Perry Hutchinson, a former Alderman for the Ninth Ward of the City of Chicago; Marian Humes, a former Alderman for the Eighth Ward of the City of Chicago; John Adams, the former City Deputy Director of Revenue and Acting Director of Revenue; Melvin G. DuBrock, the former Assistant Commissioner of the Department of Streets and Sanitation of the City of Chicago; Charles Knox, an unlicensed lawyer; and David Hammond, also an unlicensed lawyer.

The defendants are charged with mail fraud, wire fraud, violation of the Travel Act and Hobbs Act, conspiracy, racketeering, and other offenses. Defendants Lambesis and DuBrock have pleaded guilty. Presently before the Court are numerous motions to dismiss and other motions relating to the sufficiency and form of the indictment. For the reasons described below, defendants' motions are denied with the exception of McClain's motion for a bill of particulars, which is granted in part.

## II. THE INDICTMENT

The indictment[1] consists of sixty-seven counts, not all of which name each defendant. The allegations center around attempts to procure Chicago and Cook County contracts for Systematic Recovery Services, Ltd. ("SRS"), a private debt collections firm based in New York. The factual allegations are taken as true for purposes of the pending motions. *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 343 n. 16, 72 S.Ct. 329, 332 n. 16, 96 L.Ed. 367 (1952).

Count One, which contains most of the indictment's factual allegations, charges that the defendants violated 18 U.S.C. § 371 by conspiring to commit violations of the mail fraud, wire fraud and interstate travel statutes. Count One details 284 overt acts committed in furtherance of this conspiracy. These acts include discussions between the defendants and other co-conspirators concerning the procurement of public contracts for SRS; requests for payments of cash and other things of value in exchange for defendants' assistance in procuring such contracts; payoffs from SRS through Michael Raymond, an unindicted co-conspirator who cooperated with authorities during much of the alleged conspiracy; the provision of non-public information to SRS; attempts to thwart efforts of competitors to procure contracts; and the creation of purportedly independent research projects concerning debt collection contracts, which projects were secretly funded by SRS.

Counts Two through Fifteen charge the defendants with violations of the Travel Act, 18 U.S.C. § 1952, by travelling and using interstate facilities to commit bribery and extortion.

Counts Sixteen through Forty-three charge most of the defendants with extortion and attempted extortion in violation of the Hobbs Act, 18 U.S.C. § 1951, by obtaining property from SRS under color of official right and by the wrongful use of fear of economic harm.

Counts Forty-four through Fifty-eight charge the defendants with mail fraud and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 by devising a scheme to defraud and to obtain property, including public contracts, through fraudulent representations.

Count Fifty-nine charges the defendants with violations of the racketeering statute (RICO), 18 U.S.C. § 1962, by conspiring to participate in the conduct of the affairs of SRS through a pattern of racketeering activity, including extortion, mail and wire fraud, and wrongful travel and use of interstate facilities.

Counts Sixty through Sixty-two and Sixty-four charge defendants McClain and Adams with tax fraud in violation of 26 U.S.C. §§ 7206(1) and 7206(4).

Finally, Counts Sixty-three and Sixty-five through Sixty-seven charge several of the defendants with making false statements to the Federal Bureau of Investigation in violation of 18 U.S.C. § 1001.

## III. MOTIONS FOR BILL OF PARTICULARS

### A. Humes

Defendant Humes has moved, pursuant to Fed.R.Crim.P. 7(f), for a bill of particulars with respect to certain paragraphs of the indictment. She seeks disclosure of the identities of the victims of the alleged mail and wire fraud, the objects of the alleged fraud, and the dates, times, places, and nature of any conduct by which she allegedly aided and abetted violation of the Travel Act, if the government intends to proceed upon an aiding and abetting theory.

The granting of a bill of particulars is within the discretion of the trial court. *United States v. Kendall*, 665 F.2d 126, 134 (7th Cir.1981), *cert. denied*, 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 140 (1982). The purpose of a bill of particulars is to provide the defendant with the information necessary to prepare a defense.

---

1. The government filed a superceding indictment on July 8, 1987. "Indictment" herein refers to the superceding indictment.

*See United States v. Hedman,* 458 F.Supp. 1384, 1385 (N.D.Ill.1978). A bill of particulars is required only where the charges in the indictment are so general that they do not advise the defendant of the specific acts of which he or she is accused. *See United States v. Andrus,* 775 F.2d 825, 843 (7th Cir.1985). A bill of particulars is not necessary where the indictment sets forth the elements of the offense charged and sufficiently apprises the defendant of the charges to allow the preparation of a defense. *Kendall,* 665 F.2d at 134.

■ The indictment in this case is very detailed, and it contains sufficient information to inform the defendant of the charges against her. Furthermore, the government has made available its videotapes of defendants' conduct and is transcribing for defendants the tapes it plans to introduce as evidence. The government is not required to go further and provide defendant with all of the details of the evidence the government plans to introduce or the purposes for which it will be introduced. *Kendall,* 665 F.2d at 135. Defendant's motion for a bill of particulars is therefore denied.

### B. McClain

Defendant McClain has also moved for a bill of particulars with respect to certain paragraphs of the indictment. He seeks (1) specification of the qualifications of competing bidders for city contracts; (2) specification of documents demonstrating SRS's performance on one of the contracts in issue; (3) specification of the evidence which demonstrates that he had knowledge that SRS would give kickbacks to public officials; (4) specification of the manner in which his receipt of money from SRS was illegal; (5) specification of the evidence that he had knowledge of receipt of money by co-conspirators; (6) specification of the manner in which Chicago or Cook County was defrauded of "money or property;" and (7) further details of the concealment of assets alleged in Count Sixty-one.

■ With the exception of Count Sixty-one, the indictment is sufficiently detailed to provide McClain with knowledge of the elements of the offense charged and to allow him to prepare a defense. The additional information which McClain seeks relates solely to the nature of the government's evidence, the theory of the government's case, and other information beyond the scope of a bill of particulars. With respect to Count Sixty-one, however, a bill of particulars is necessary. That count charges McClain with violating 26 U.S.C. § 7206(4) by concealing "settlement proceeds in excess of $400,000 upon which levy was authorized by Section 6331 of the Internal Revenue Code." McClain requests that the government be ordered to "[s]pecify the 'levy' authorized by Section 6331 of the Internal Revenue Code and when it was actually issued and specify how defendant McClain ... did knowingly and unlawfully conceal settlement proceeds from the IRS." Without a bill of particulars, McClain is unable to prepare a defense against this charge, as evidenced by the Court's own inability to determine whether Count Sixty-one even relates to the other charges in the indictment. (*See infra* at n. 16.) McClain's motion for a bill of particulars is therefore granted with respect to Count Sixty-one and denied in all other respects. The bill of particulars is due December 15, 1988.

## IV. MOTIONS TO DISMISS COUNT ONE

### A. Humes

Defendant Humes has moved to dismiss Count One on the grounds that it is vague and that it fails to charge an offense. Humes claims that the indictment fails to specify the exact scope of the conspiratorial agreement between her and the other defendants, that it fails to explain how the agreement contributed to the substantive violations, that it fails to specify the victims of the fraud which defendant allegedly conspired to commit, that it does not identify the tangible thing of value which the conspirators agreed to obtain, and that it charges multiple conspiracies.

■ An indictment must sufficiently describe the offense charged so that the defendant may prepare a defense. *United*

*States v. Roman,* 728 F.2d 846, 850 (7th Cir.), *cert. denied,* 466 U.S. 977, 104 S.Ct. 2360, 80 L.Ed.2d 832 (1984). The indictment must also be specific enough to establish a record that demonstrates the availability of a double jeopardy defense if future proceedings are brought against the same defendant. *Id.* "Generally, an indictment is sufficient when it sets forth the offense in the words of the statute itself, as long as those words expressly set forth all the elements necessary to constitute the offense intended to be punished." *Id.* Furthermore, "an indictment alleging a conspiracy need not be as detailed as one alleging a substantive offense." *Id.* at 853 n. 2.

■ Count One of the indictment adequately sets forth the elements of the crime of conspiracy under 18 U.S.C. § 371, and it specifies 284 overt acts allegedly committed to effect the objects of that conspiracy. The indictment is replete with detail, and Humes fails to cite any authority requiring the government to provide the additional information she identifies. Humes' motion is therefore denied.

### B. McClain

Defendant McClain's motion to dismiss Count One is premised on the same arguments which he raises with respect to the Hobbs Act and mail and wire fraud charges. For the reasons discussed in Parts V and VII, *infra* at 1279–83 and 1285–89, McClain's motion is denied.

## V. MOTIONS TO DISMISS EXTORTION COUNTS

The Hobbs Act defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). Several counts of the indictment charge that defendant McClain "committed and attempted to commit extortion ... which extortion consisted of obtaining property ... from SRS, with its consent induced under color of official right and by the wrongful use of fear of economic harm." McClain moves to dis-

miss these counts on the basis that any property which he acquired was obtained neither "under color of official right" nor "by the wrongful use of fear of economic harm."

### A. Under Color of Official Right

McClain asserts that he cannot have obtained property under color of official right because throughout the time of the actions charged in the indictment he was a private citizen rather than a public official. He argues that action "under color of official right" logically refers to the improper use of officially conferred power, and he notes that the great majority of cases upholding convictions under this clause have involved public officials. The government responds that a private individual violates the Hobbs Act if he aids a public official in committing extortion, causes a public official to act, or is believed by his victim to have influence over official decisions.

■ At common law, only a public official could commit the crime of extortion. The 1934 predecessor of the Hobbs Act expanded the concept of extortion to apply to private individuals. *See United States v. Hathaway,* 534 F.2d 386, 393 (1st Cir.), *cert. denied,* 429 U.S. 819, 97 S.Ct. 64, 50 L.Ed.2d 79 (1976); *United States v. Freedman,* 562 F.Supp. 1378, 1387 (N.D.Ill.1983). In doing so, the 1934 Act (and, subsequently, the Hobbs Act) set forth two ways in which the requisite element of coercion could be demonstrated: action under color of official right, and action involving use of fear of economic harm. As the second prong evidences concern with the victim's fear that the defendant may cause economic harm, so the natural reading of the first prong is that it concerns a victim's fear that the defendant may cause harm through use of the power of the state. This belief must be reasonable, and it must involve a belief in the defendant's actual access to power, not merely a belief or hope that the defendant may have some nebulous influence on those who make official decisions. This reading of the statute is supported by the case law, which must be reviewed in some detail in order to un-

derstand fully the boundaries of the statute's application.

In *United States v. Braasch*, 505 F.2d 139 (7th Cir.1974), *cert. denied*, 421 U.S. 910, 95 S.Ct. 1561, 43 L.Ed.2d 775 (1975), the Seventh Circuit upheld the conviction of a number of policemen for obtaining money in exchange for refraining from exercising their official powers to harass bars and other businesses. The court held that "the conspirators used the power and authority vested in them by reason of their office to obtain money not due them or due the office. The use of office to obtain payments is the crux of the statutory requirement of 'under color of official right.' ... So long as the motivation for the payment focuses on the recipient's office, the conduct falls within the ambit of 18 U.S.C. § 1951." 505 F.2d at 151.

Defendant McClain claims that the Seventh Circuit's emphasis on "the recipient's office" establishes that a private citizen cannot violate the Hobbs Act. However, the court was not faced with the issue of the circumstances under which a private individual could be convicted of extortion. Rather, the court considered whether a public official could be convicted of extortion where the conduct of the official was not identical with the power conferred on the actor by virtue of his office. The court, in holding that such circumstances would support a conviction, did not find that the holding of public office was necessary, but rather that it was sufficient, so long as the office was the motivation for the victim's payment.

This holding has been repeated in a number of subsequent cases. In *United States v. Hedman*, 630 F.2d 1184, 1195 (7th Cir. 1980), *cert. denied*, 450 U.S. 965, 101 S.Ct. 1481, 67 L.Ed.2d 614 (1981), the court held that "it is unnecessary to show that the defendant induced the extortionate payment or that the payor was entitled to the benefit obtained from such payment. The government is merely required to prove that a public official obtained money to which he was not entitled and which he obtained only because of his official position." In *United States v. Blackwood*, 768

F.2d 131 (7th Cir.1985), the defendant police officer contended that it was unreasonable for the alleged extortion victim to believe that the defendant could influence cases by virtue of being a police officer. In upholding his conviction, the court held: "We cannot say that as a matter of law appellant's victim could not reasonably have believed that appellant's official position enabled him to keep his promise to influence judicial decisions by passing bribes on to judges." 768 F.2d at 135. *See also United States v. Rindone*, 631 F.2d 491, 495 (7th Cir.1980).

Both parties here make too much of those cases. The court was not faced in those cases with the issue of whether private citizens could be convicted of violating the Hobbs Act; the court's focus on the defendants' office does not, therefore, mandate that a defendant be an office-holder in order to be convicted. However, this focus does illustrate the necessity of a close connection between the defendant and his perceived official power. The government emphasizes the court's focus on the victim's belief in those cases, arguing that if the victim believed that the defendant could influence official conduct, it is immaterial whether the defendant held public office at the time. However, the court's focus was not on the victim's belief in a vacuum, but on the victim's perception of the power held by the defendant by virtue of his public office. Again, the court simply did not address the circumstances under which a private citizen could be convicted for violating the Hobbs Act.

The Seventh Circuit did face the issue of a private citizen's conviction under the Hobbs Act in *United States v. Emalfarb*, 484 F.2d 787 (7th Cir.), *cert. denied*, 414 U.S. 1064, 94 S.Ct. 571, 38 L.Ed.2d 469 (1973). The court upheld the conviction of a private citizen who obtained payments from the victim by threatening to influence the police to ticket the victim's vehicles. The court held that the conviction was proper regardless of whether the defendant actually had such influence, as long as it was reasonable for the victim to believe that he had such influence. 484 F.2d at 789. However, as noted in *United States*

*v. Freedman,* 562 F.Supp. 1378, 1386 (N.D. Ill.1983) (Shadur, J.), the *Emalfarb* court did not state that the conviction was predicated on the "official right" clause of the Hobbs Act. Rather, the facts in *Emalfarb* clearly support conviction under the "use of fear of economic harm" prong of the Hobbs Act, and they should not be stretched to apply to the "official right" prong when the court did not rely on that prong in its opinion.

In *United States v. Irali,* 503 F.2d 1295 (7th Cir.1974), *cert. denied,* 420 U.S. 990, 95 S.Ct. 1424, 43 L.Ed.2d 670 (1975), a city hall clerk was convicted of extortion for obtaining money in exchange for facilitating the approval of the victim's liquor license application. The defendant himself was not in a position to approve or deny applications, and at most he could have delayed or lost them. However, he purported to speak on behalf of Officer Greenwich, an official who could cause the license to be denied. 503 F.2d at 1300–01. The court concluded that "there was sufficient evidence for the jury to have found that Irali [committed extortion] either under his own position or purportedly through Greenwich's position." *Id.* The *Irali* court did not hold, as the government contends, that private actors who are believed to have influence over official decisions can be guilty of "official right" extortion. The court explicitly left open the question of whether "one can commit extortion under color of official right by using the office of another." *Id.* at 1301 n. 4. The court found it unnecessary to decide that issue because the jury could have found the defendant guilty of aiding and abetting extortion by the public official for whom he acted as a go-between. *Id.* Thus although *Irali* did not hold that a private citizen could directly commit "official right" extortion, it did open the door to that possibility by recognizing that a conviction could be appropriate for aiding and abetting. *See also United States v. Grande,* 620 F.2d 1026, 1031–32 (4th Cir.) (private contractor who served as a conduit for payments to the official could be convicted as an aider and abettor under the "official right" prong of the Hobbs Act),

*cert. denied,* 449 U.S. 830, 101 S.Ct. 98, 66 L.Ed.2d 35 (1980).

In *United States v. Meyers,* 529 F.2d 1033 (7th Cir.), *cert. denied,* 429 U.S. 894, 97 S.Ct. 253, 50 L.Ed.2d 176 (1976), the court reversed the dismissal of an indictment against defendants charged with conspiracy to commit extortion. The defendants were charged with obtaining money while they were candidates for public office. The court held that they could be convicted under the "official right" prong, even though they were not public officials when they accepted the money, because the defendants were charged with conspiracy rather than the substantive offense and because the alleged conspiracy continued during the time that the defendants held actual office. 529 F.2d at 1037–38.

In *United States v. Margiotta,* 688 F.2d 108 (2d Cir.1982), *cert. denied,* 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983), a private citizen was convicted of extortion under the Hobbs Act pursuant to 18 U.S.C. § 2(b). The defendant had been the long-time Chairman of the Republican Committees of Nassau County and the Town of Hempstead, New York. He exercised a "vise-like grip" over the governmental functions of the county and town. 688 F.2d at 116. The court found that the defendant could be convicted under the "official right" prong even though he was not a public official, upholding a jury instruction that if "the defendant willfully and knowingly caused officials of the Town of Hempstead and County of Nassau under color of office to contribute in a substantial way to inducing the [victim] to consent to pay out the moneys ... then the defendant is as responsible for the official action as if he was himself the public official concerned and had performed the action directly." *Id.* at 131. In upholding this instruction, the court interpreted the causation concept narrowly:

[A]n individual with the requisite criminal intent may be held liable as a principal if he is a cause in fact in the commission of a crime, notwithstanding that the proscribed conduct is achieved through the actions of innocent intermediar-

ies.... In causing the innocent intermediary to commit the challenged actions, the individual adopts both the intermediary's act and his capacity.

*Id.* (citations omitted). Thus *Margiotta* demonstrates that a private citizen who has effective control over official decisionmaking may be convicted under the "official right" prong of the Hobbs Act.

In *United States v. Freedman*, 562 F.Supp. 1378 (N.D.Ill.1983) (Shadur, J.), two private attorneys were charged with obtaining money from an individual on the representation that they would use that money to bribe the judge who was hearing the individual's case. The attorneys were charged only under the "official right" prong of the Hobbs Act. The court dismissed the indictment because the attorneys were not public officials and thus could not be convicted of extortion under color of official right. 562 F.Supp. at 1384–88.

In *United States v. Phillips*, 586 F.Supp. 1118 (N.D.Ill.1984) (Aspen, J.), a private attorney was charged with extortion for telling another attorney that a decision favorable to that attorney's client in a pending case could be obtained for $10,000. The court rejected the defendant's argument that he could not be prosecuted under the "official right" prong of the Hobbs Act because he was not a public official. Citing cases such as *Irali, supra* at 1281, where public officials had been believed by their victims to hold power which they did not actually possess, the court noted the general emphasis on whether the "victim reasonably believed that the defendant was in a position to wield governmental power to the victim's detriment." 586 F.Supp. at 1122. The court then extended this reasoning to hold that a private citizen could also be convicted under the "official right" prong. *Id.* at 1123. *But see United States v. Kaye*, 586 F.Supp. 1395, 1406 (N.D.Ill. 1984) (Shadur, J.) (criticizing the reasoning in *Phillips* and reaffirming *Freedman*).

*United States v. Gonzales*, 620 F.Supp. 1143 (N.D.Ill.1985) (Moran, J.), presented a fact situation similar to that in *Phillips.* The court held that a private attorney could not be prosecuted under the official right prong of the Hobbs Act, aligning itself with *Freedman* rather than with *Phillips.* The court stated that prosecution of "an attorney, a private actor, with a perceived corrupt relationship with government officials," would stretch "the statutory language beyond the breaking point." 620 F.Supp. at 1147.

In *United States v. Green*, No. 80 CR 477 (N.D.Ill. Jan. 15, 1981) (Decker, J.), *rev'd on other grounds*, 671 F.2d 1020 (7th Cir.1982), the court acquitted, on counts of extortion and aiding and abetting extortion, two precinct captains, one of whom was also employed by the clerk of the state court. The court noted that in both extortion cases involving public officials and those involving private individuals, "the courts have emphasized the victim's 'reasonable belief' that the defendant was in a position to wield the power of the state to his detriment." (Slip op. at 8.) The court found that this standard was not met, although it convicted the defendants of conspiracy to commit extortion.[2]

The standard set forth by Judge Decker appropriately recognizes the possibility that private individuals may be convicted of "official right" extortion in some circumstances while setting a strict standard for the extent and reasonableness of the defendant's perceived influence over official decisionmaking. A private individual may be convicted under the "official right" prong if (1) he aids and abets a public official to commit extortion, *see Grande*, 620 F.2d at 1031; *Irali*, 503 F.2d at 1301 n. 4;[3] (2) he exerts actual control over official decision-making, *see Margiotta*, 688 F.2d at 131; or (3) he is reasonably perceived by his victim as exerting such

---

2. On appeal, the Seventh Circuit reversed the convictions on the ground that the interstate commerce element of the Hobbs Act was not satisfied.

3. The indictment need not specifically plead 18 U.S.C. § 2(a) to support a conviction for aiding and abetting, so long as no unfair surprise results. *United States v. Tucker*, 552 F.2d 202, 204 (7th Cir.1977).

control, *see Phillips,* 586 F.Supp. at 1122; *Green,* slip op. at 8.[4] McClain is therefore not entitled to a dismissal solely on the ground that he was not a public official during the relevant time period.

### B. Fear of Economic Harm

■ McClain further contends that he cannot be found guilty of obtaining property through the wrongful use of fear of economic harm. He argues that the "victim" of McClain's action was Michael Raymond, who could not have had any fear of economic harm because he was serving as a government informant and had no personal stake in obtaining the contracts.[5]

■ Defendant's argument fails for two reasons. First, the extortion counts charge that the defendants obtained money from SRS. They do not allege that Raymond, who represented himself as an agent of SRS, was the victim of the extortion, but rather that SRS was the victim. Second, even if the victim of the alleged conduct did not experience actual fear of economic harm, a conviction may still be obtained for attempted extortion, which is also charged in the indictment. As stated in *United States v. Quinn,* 514 F.2d 1250, 1267 (5th Cir.1975), *cert. denied,* 424 U.S. 955, 96 S.Ct. 1430, 47 L.Ed.2d 361 (1976), "the inquiry [in attempted extortion] is not whether the alleged extortionist will be allowed to carry out his threat, but whether the threat itself is reasonably calculated to instill fear in the victim." *See also United States v. Goodoak,* 836 F.2d 708, 712 (1st Cir.1988); *United States v. Haimowitz,* 725 F.2d 1561, 1572 (11th Cir.), *cert. de-*

*nied,* 469 U.S. 1072, 105 S.Ct. 563, 83 L.Ed.2d 504 (1984). Thus Raymond's status as a government informant does not require dismissal of the extortion counts.

## VI. MOTIONS TO DISMISS TRAVEL ACT COUNTS

### A. Incorporation of Illinois Bribery Statute

The indictment charges that the defendants traveled and used interstate facilities to carry on unlawful activity in violation of the Travel Act, 18 U.S.C. § 1952. The Travel Act defines "unlawful activity" as including "extortion [or] bribery ... in violation of the laws of the State in which committed or of the United States." In this case, the alleged unlawful activity is extortion in violation of the Hobbs Act and bribery in violation of Illinois law. Defendant McClain argues that because he was not a public official during the relevant time period, his conduct could not constitute extortion in violation of the Hobbs Act or bribery in violation of Illinois law, so the Travel Act counts must fail. In the alternative, he asks that the references to the Illinois statutes be stricken from the indictment.

■ With respect to the extortion claim, the Travel Act allegation is sufficient because private citizens can, in some instances, be convicted of violating the Hobbs Act. *See supra* at Part V.

For its bribery allegations, the indictment relies on Ill.Rev.Stat. ch. 38 §§ 33–1 and 33–3, the Illinois bribery and official misconduct statutes. McClain argues that those portions of the Illinois bribery stat-

---

**4.** The government argues that the official right prong of the Hobbs Act also applies to McClain because he is a former public official, citing *United States v. Furey,* 491 F.Supp. 1048 (E.D. Pa.), *aff'd without opinion,* 636 F.2d 1211 (3d Cir.1980), *cert. denied,* 451 U.S. 913, 101 S.Ct. 1987, 68 L.Ed.2d 304 (1981). In *Furey,* the Court merely rejected an argument that the "official right" prong did not apply to "an official recently deposed from office who is claimed to still maintain control over the functions and powers of his former office." 491 F.Supp. at 1066–67. The case thus merely reflects the principle of *Margiotta* that a defendant may be convicted under the official right prong if the defendant exercises actual control over official deci-

sion-making. *Furey* cannot be extended to apply the official right prong to a defendant solely on the basis of the defendant's status as a former public official, although the status of having been a public official may, of course, contribute to a reasonable perception of control over official decision-making.

**5.** The government has not responded to this argument, stating that defendant does not dispute that the economic harm prong applies. Apparently, the government failed to read defendant's brief thoroughly enough to recognize the argument.

ute which prohibit receipt of property by public officials in certain circumstances (Ch. 38 §§ 33–1(d), (e), 33–3(d)) cannot apply to him because he is not a public official. However, McClain need not be the person who directly received property in order to have violated the Travel Act. The Travel Act does not merely prohibit the same conduct prohibited by the state bribery statues; rather, it authorizes punishment for one who travels in interstate commerce or uses an interstate facility with intent to "distribute the proceeds of any unlawful activity" or "otherwise promote ... or facilitate the promotion ... of any unlawful activity." 18 U.S.C. § 1952(a). One need not be a public official to engage in interstate commerce with intent to distribute the proceeds of, or otherwise promote, the receipt of illegal payments by public officials. McClain's motion is therefore denied.

■ Defendant Hutchinson has moved to strike the references to the Illinois official misconduct statute, Ill.Rev.Stat. ch. 38 § 33–3, from the Travel Act and RICO counts, on the basis that the Illinois statute does not prohibit "bribery" within the meaning of the federal Acts. Defendant argues that "bribery," as used in the federal Acts, applies only to conduct involving corrupt intent and an agreement to influence the performance of an act or duty, elements which are not present in the Illinois statute. In *United States v. Garner*, 837 F.2d 1404 (7th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 2022, 100 L.Ed.2d 608 (1988), the court rejected this argument in the RICO context. The court held that "bribery," one of the RICO predicate acts, applies to any statute, regardless of its label, which prohibits bribery in a generic sense. 837 F.2d at 1418. The court specifically held that the Illinois official misconduct statute proscribes bribery in the generic sense and that conduct which violates that statute constitutes a RICO predicate

act. *Id.* at 1418–19. The Travel Act is similar to RICO in terms of its use of the term "bribery" as an underlying offense, so the Seventh Circuit's analysis applies equally well to the Travel Act. "Bribery," as used in both RICO and the Travel Act, thus includes the conduct proscribed by the Illinois official misconduct statute, and Hutchinson's motion to strike the references to that statute is denied.

### B. Specification of Overt Acts

■ In order to obtain a conviction for violation of the Travel Act, the government must prove that the defendant committed an overt act in furtherance of unlawful activity. 18 U.S.C. § 1952(a). *See United States v. Perez,* 700 F.2d 1232, 1238 (8th Cir.1983); *United States v. Tavelman,* 650 F.2d 1133, 1138 (9th Cir.1981), *cert. denied,* 455 U.S. 939, 102 S.Ct. 1429, 71 L.Ed.2d 649 (1982). Defendant Hutchinson has moved to dismiss the Travel Act counts on the ground that they fail to specify an overt act in furtherance of the allegedly illegal activity.

Hutchinson relies on *United States v. Hayes,* 775 F.2d 1279, 1282–83 (4th Cir. 1985), in which a Travel Act count was dismissed for failure to allege an overt act. However, unlike the indictment in *Hayes,* which did not include even a conclusory allegation of an overt act, the indictment here tracks the statutory language, including the overt act requirement.[6] Hutchinson argues that a conclusory allegation which tracks the statutory language in this manner is insufficient. On the contrary, an indictment very similar to this one was upheld in *United States v. Stanley,* 765 F.2d 1224 (5th Cir.1985). The court held that an indictment which tracks the language of the Travel Act is sufficient because the Act itself clearly sets out the essential elements of the offense. 765 F.2d

---

6. Count Fourteen, for example, alleges that defendants caused a check to be sent by mail with the intent to distribute the proceeds of and otherwise facilitate unlawful activity, "and thereafter performed, attempted to perform and caused the performance of and attempted performance of acts to distribute the proceeds of, and promote, manage, establish and carry on, and facilitate the promotion, management, establishment and carrying on of said illegal activity."

at 1239–40.[7] Generally, such tracking of the statutory language is sufficient unless "additional information is necessary to provide the accused with a clear understanding of the specific charges against him." *United States v. Horton*, 676 F.2d 1165, 1169 (7th Cir.1982) (citations omitted), *cert. denied*, 459 U.S. 1201, 103 S.Ct. 1184, 75 L.Ed.2d 431 (1983). In light of the extensive factual allegations in the indictment and the Act's clarity in setting forth the elements of the offense, additional information is not necessary in this case. The indictment's tracking of the language of the Travel Act is sufficient. Accordingly, Hutchinson's motion is denied.

## VII. MOTIONS TO DISMISS MAIL FRAUD AND WIRE FRAUD COUNTS

### A. Scheme to Defraud

■ The indictment charges that defendants committed mail and wire fraud by devising a scheme to obtain, by fraudulent representations and promises, "money and property, including but not limited to City of Chicago and Cook County contracts." Defendants McClain and Adams have moved to dismiss these counts, alleging that the government is actually charging them only with depriving the public of "intangible rights" and that the awarding of the contracts in issue could not have represented monetary or property losses.

The elements of mail fraud are the devising of a scheme to defraud and the use of the mails for the purpose of executing the scheme. 18 U.S.C. § 1341. *See United States v. Gimbel*, 830 F.2d 621, 626 (7th Cir.1987). Similarly, the elements of wire fraud are the devising of a scheme to defraud and interstate wire transmission for the purpose of executing the scheme. 18 U.S.C. § 1343.

In *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), the defendants had been charged with defrauding the citizens and government of Kentucky of intangible rights such as the

right to honest conduct of governmental affairs. The Supreme Court held that the mail fraud statute extends only to deprivation of "money and property," and does not extend to a citizenry's intangible right to good government. 107 S.Ct. at 2882. This holding applies to wire fraud as well as mail fraud. *Gimbel*, 830 F.2d at 627.

The indictment in this case is not phrased in terms of deprivation of intangible rights. Rather, it charges the defendants with fraudulently obtaining money and property, including public contracts. McClain and Adams claim that this distinction is insufficient to prevent the application of *McNally* to this case.

McClain also challenges the fraud counts on the ground that the indictment does not allege facts under which it could be concluded that the victim of the fraud was deprived of money or property. In other words, aside from the question of whether the public contracts constituted money or property for purposes of the fraud statutes, McClain argues that there is no allegation that Chicago or Cook County was harmed. Specifically, there is no allegation that the SRS contracts were less favorable to the victims than contracts offered by SRS's competitors.

Defendants' arguments shall be treated together, as they both raise the same question—whether the indictment charges a scheme to defraud the City and County of money or property.

Although it is now clear that the mail and wire fraud statutes do not apply to schemes to defraud victims of intangible rights, it is not clear what constitutes an intangible right. Some examples of intangible rights are the right to honest conduct of governmental affairs, *McNally*, 107 S.Ct. 2875 (scheme involved agreement to continue agency relationship between state government and insurance company in exchange for kickbacks from insurance company to companies controlled by defendants); *United States v. Holzer*, 840 F.2d 1343, 1347–49 (7th Cir.1988) (reversing conviction of judge who received bribes); the

---

**7.** The indictment in *Stanley* charged, in relevant part, that the defendant "did perform and attempt to perform acts to promote ... said unlawful activity." 765 F.2d at 1239 n. 14.

government's right to information which might increase tax revenues, *Gimbel*, 830 F.2d at 626–27 (reversing conviction for circumventing currency reporting requirements); and an employer's right to the honest and loyal services of its employee, *United States v. Lytle*, 677 F.Supp. 1370, 1381–84 (N.D.Ill.1988) (Shadur, J.) (striking such charge from indictment against bank officer charged with making improper loans in exchange for kickbacks). Examples of things which constitute money or property rather than intangible rights include confidential business information, *Carpenter v. United States*, 484 U.S. 19, 108 S.Ct. 316, 320, 98 L.Ed.2d 275 (1987) (upholding conviction for depriving newspaper of control over confidential business information); money spent to obtain and use goods which were bought pursuant to false representations, *United States v. Wellman*, 830 F.2d 1453, 1462–63 (7th Cir. 1987); and down payments and loan proceeds received from investors in a tax shelter, *United States v. Eckhardt*, 843 F.2d 989, 996–97 (7th Cir.1988) (affirming conviction for running illegal tax shelter scheme), *cert. denied*, —— U.S. ——, 109 S.Ct. 106, 102 L.Ed.2d 81 (1988).

The allegations in this case describe a scheme which is more akin to circumstances in which money or property was involved than to circumstances involving intangible rights. The alleged scheme involved the deprivation of public contracts from the City of Chicago and Cook County. The contracts provided for payment to SRS in the form of commissions drawn from money to which Chicago and Cook County were otherwise entitled. The scheme which is alleged is thus a scheme to sell a service to Chicago and Cook County while making false representations concerning the nature of that service—*i.e.*, representations that the contract was sought pursuant to legitimate procedures. The alleged scheme, therefore, essentially is no different from that involved in *United States v. Wellman*, 830 F.2d 1453 (7th Cir.1987), where the defendant was convicted for misrepresenting that chemical tanks sold by his company complied with certain regulations.

It is not material that defendants' scheme may not have resulted in the award of a contract less favorable to the City and County than contracts offered by SRS's competitors. First, the essential element of mail or wire fraud is the devising and participation in a scheme; the success of the scheme need not be proved. *United States v. Reicin*, 497 F.2d 563, 571 (7th Cir.), *cert. denied*, 419 U.S. 996, 95 S.Ct. 309, 42 L.Ed.2d 269 (1974). For example, in *Wellman*, there is no reference to a finding that the purchaser of the defective tanks suffered a greater economic loss than it would have suffered if it purchased tanks from another supplier. *See also United States v. George*, 477 F.2d 508, 513 (7th Cir.) ("A man is none the less cheated out of his property, when he is induced to part with it by fraud, because he gets a quid pro quo of equal value."), *cert. denied*, 414 U.S. 827, 94 S.Ct. 155, 38 L.Ed.2d 61 (1973); *United States v. Keane*, 678 F.Supp. 708, 713 (N.D.Ill.1987) (Decker, J.) ("the possibility that [defendant] sustained a net loss from the entire scheme is immaterial to his guilt.... [Defendant's] shortcomings as a 'businessman' do not cleanse him of criminal culpability."), *aff'd*, 852 F.2d 199 (7th Cir.1988).

Second, the indictment's allegations show an actual loss to the City and County. The case of *United States v. Fagan*, 821 F.2d 1002 (5th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 697, 98 L.Ed.2d 649 (1988), is instructive. The defendant in *Fagan* operated two corporations which leased boats to offshore drilling companies. He entered into a scheme with an employee of an offshore drilling company whereby the employee would cause the company to lease boats from the defendant in exchange for personal payments from the defendant to the employee. In affirming the defendant's conviction for mail fraud, the court rejected the argument that the company was not defrauded because the defendant himself absorbed the costs of the kickbacks and kept his leasing rates competitive. 821 F.2d at 1008–09. Following the Seventh Circuit's decision in *George, supra*, the court noted that the kickbacks demonstrat-

ed the possibility that the defendant was willing to charge lower leasing rates, and the kickback scheme deprived the company of this economic benefit. *Id.* at 1010. Furthermore, the kickback scheme deprived the company of economically material information concerning the rate defendant would have accepted, and it fraudulently induced the company to part with its rental payments on the basis of false promises. *Id.* at 1009–10. The court held that the deprivation of the company's control over its money, the possibility of leasing boats at a lower rate, and its right to the kickbacks themselves constituted property rights within the meaning of *McNally. Id.* at 1011 n. 6.

The reasoning in *Fagan* is persuasive, and it applies equally well to this case. The alleged scheme deprived the City and County of control over their money (*i.e.*, the amounts they were to award as commissions), the value of the possibility of receiving a contract at a lower price, and the right to the kickbacks themselves.[8] This case is not one that concerns intangible rights, but rather involves a scheme to sell services on the basis of fraudulent representations designed to induce the victims to part with money or property.

*B. Furtherance of Scheme*

Four of the mail fraud charges, Counts Fifty-five through Fifty-eight, concern correspondence from SRS to individuals who apparently owed money to the City of Chicago for water bills. Defendant Hutchinson moves to dismiss these counts on the ground that they do not allege that the mailings were made "in furtherance of" a scheme to defraud.

 In order to support a conviction for mail fraud, a mailing must be "for the purpose of executing" a scheme to defraud and be "causally linked to the scheme's success." *United States v. Kwiat,* 817 F.2d 440, 443 (7th Cir.), *cert. denied,* — U.S. ——, 108 S.Ct. 284, 98 L.Ed.2d 245

(1987). In other words, "(t)he completion of the scheme must depend in some way upon the mailings charged." *United States v. Cina,* 699 F.2d 853, 861 (7th Cir.), *cert. denied,* 464 U.S. 991, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983). The Seventh Circuit has summarized the law governing the "in furtherance" requirement as follows:

> Mailings are in furtherance of a scheme if they are incidental to an essential part of the scheme. Under this definition, mailings made after the scheme has reached its fruition are not in furtherance of the scheme, nor are mailings which conflict with the purposes of the scheme and have little effect upon the scheme. On the other hand, mailings made to promote the scheme, or which relate to the acceptance of the proceeds of the scheme, or which facilitate concealment of the scheme have been found to have been in furtherance of the scheme under this definition.

*United States v. Rauhoff,* 525 F.2d 1170, 1176 (7th Cir.1975) (citations omitted). The indictment need not allege the specific manner in which the mailings furthered the scheme to defraud:

> The Government need not allege the subordinate evidentiary facts by which it intends to prove the 'in furtherance' element of the crime charged, and an indictment setting out the mailings charged and alleging that they were in furtherance of the scheme should not be dismissed as insufficient on its face unless there is no conceivable evidence that the Government could produce at trial to substantiate its 'in furtherance' allegation.

*United States v. Castor,* 558 F.2d 379, 385 (7th Cir.1977), *cert. denied,* 434 U.S. 1010, 98 S.Ct. 720, 54 L.Ed.2d 752 (1978).

 In this case, it is not inconceivable that the government will produce evidence at trial to substantiate the "in furtherance" allegations. The government contends that the mailings furthered the scheme in sever-

---

**8.** *See also United States v. Runnels,* 833 F.2d 1183, 1187 (6th Cir.1987) (A "fiduciary's acquisition of an economic benefit which properly belongs to the principal, through an intentional breach of a fiduciary duty owed to the principal, is in itself sufficient to support a finding of guilt under 18 U.S.C. § 1341").

al ways: they involved the collection of the revenues which were the very objects of the contracts sought by SRS; they were necessary for the generation of additional capital for bribe payments to obtain further contracts; and they were important to the success of the contract, which success itself would be important in securing further contracts.

These alleged relationships between the mailings and the schemes are sufficient to satisfy the "in furtherance" requirement. For example, in *United States v. Anderson*, 809 F.2d 1281, 1287 (7th Cir. 1987), the defendants were convicted of mail fraud in connection with a scheme to make money by fixing traffic tickets. One of the alleged mailings was the delivery of a bond refund check to an undercover government agent who purported to be a client of the defendant and who had been forced to post bond despite having paid bribe money to the defendants. The defendants contended that the mailing of the bond refund check was not in furtherance of the scheme because it was not necessary to the fixing of the agent's ticket. The court held that the mailing of the check furthered the scheme in several ways. It completed the transaction between the defendants and the agent. It was intended to ensure the agent's satisfaction, both to keep him from contacting authorities and to encourage him to refer additional clients to the defendants. Finally, it facilitated the concealment of the scheme by preventing the agent from going to the court to inquire about his money. 809 F.2d at 1287.

In *United States v. Murphy*, 768 F.2d 1518 (7th Cir.1985), *cert. denied*, 475 U.S. 1012, 106 S.Ct. 1188, 89 L.Ed.2d 304 (1986), a judge was convicted of mail fraud in connection with a scheme to obtain money from defense attorneys in exchange for permitting the attorneys to collect cash bond refunds ("CBRs," refunds of cash deposited to secure release on bond) as attorney's fees. The defendant argued

that the mailings of the CBRs from the court to the attorneys did not further the scheme to defraud because the mailings were simply matters between the attorneys and clients and had nothing to do with any fraud perpetrated by the defendant on the citizens at large. 768 F.2d at 1529. The court rejected this argument, emphasizing that "it was the anticipation of receiving the CBRs in a given case (and future cases) that both financed the bribes and made the scheme profitable." *Id.* at 1530.

In *United States v. McManigal*, 708 F.2d 276 (7th Cir.), *vacated in part on other grounds*, 464 U.S. 979, 104 S.Ct. 419, 78 L.Ed.2d 355 (1983), the defendant was charged with a scheme involving bribery of public officials in exchange for reduced property tax assessments. The mailings which were charged were property tax bills which reflected the improperly reduced assessments. The defendant argued that these mailings were not in furtherance of the scheme because they took place after the actual fraud had already occurred. The court rejected this argument, holding that obtaining the mailings, which reflected the reduced assessments, was "the end result of the scheme to defraud." 708 F.2d at 281 (citation omitted).

The instant case is governed by the principles set forth in *Anderson, Murphy* and *McManigal*. The mailings arguably were an essential part of the scheme, for without them SRS could not have obtained the revenue which was the object of securing the contracts in the first place. This revenue may also have been necessary to finance further bribe payments. Furthermore, the mailings may have been intended to contribute to the success of the contract and to thus both lull the City into not investigating the contract and encourage the City to award future contracts to SRS. Therefore, before hearing the evidence at trial, the Court cannot find that the government will be unable to show that the mailings were in furtherance of the scheme to defraud.[9]

---

9. Defendant relies on *United States v. Maze*, 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974), in which the Court held that the mailings of charge slips from merchants to a bank did not further the scheme to defraud. Defendant argues that this case, like *Maze*, involves the routine mailing of billing statements as standard business procedure. However, in *Maze*, the mailing of the

Hutchinson's motion to dismiss the mail fraud counts for failure to meet the "furtherance" requirement is denied.

## VIII. MOTIONS TO DISMISS RICO COUNT

Count Fifty-nine charges the defendants with violation of 18 U.S.C. § 1962(d), which prohibits a conspiracy to violate 18 U.S.C. § 1962(c). Section 1962(c), in turn, makes it unlawful for any person associated with an enterprise to conduct or participate in the conduct of the enterprise's affairs through a pattern of racketeering activity. Various defendants challenge the sufficiency of Count Fifty-nine on the grounds that it does not (1) allege association with an enterprise; (2) allege conduct which constitutes racketeering activity; (3) specify the predicate acts of racketeering; (4) allege an agreement to commit personally at least two predicate acts of racketeering; (5) allege a pattern of racketeering; and (6) allege an agreement to participate in the conduct of an enterprise through a pattern of racketeering.[10]

### A. Association with Enterprise

▮ Count Fifty-nine alleges that SRS is an enterprise within the meaning of RICO and that defendants were associated with that enterprise. Defendant Hutchinson moves to dismiss Count Fifty-nine on the basis that the allegation of association with the enterprise is insufficient.

Hutchinson argues that the conclusory allegation of association contained in Count Fifty-nine is not supported by sufficient allegations of fact. However, Count Fifty-nine incorporates by reference the 284 overt acts alleged in Count One. Reading the indictment in its entirety, *see United States v. Hoag*, 823 F.2d 1123, 1126 (7th Cir.1987), the allegations are sufficient to allege association with an enterprise.

The Seventh Circuit has made it clear that the "association" element of RICO should be interpreted broadly. In *United States v. Yonan*, 800 F.2d 164, 167 (7th Cir.1986), *cert. denied*, 479 U.S. 1055, 107 S.Ct. 930, 93 L.Ed.2d 981 (1987), the court upheld the RICO conviction of an attorney who gave bribes to a state's attorney in the expectation of receiving favorable dispositions in some of his cases. The court held that the defendant was "associated" with the state's attorneys office, holding that the association element "focuses on the business of the enterprise and the relationship of the defendant to that business.... (T)he defendant need not have a stake in the enterprise's 'goals,' but can associate with the enterprise by conducting business with it...." 800 F.2d at 167. *See also United States v. Roth*, 860 F.2d 1382, 1390 (7th Cir.1988).

In this case, Hutchinson is alleged to have associated with SRS by participating in a fraudulent scheme to secure public contracts for SRS. He allegedly received $41,200 in cash, along with other things of value, in exchange for assisting SRS through his promise of influence with other public officials and the misuse of his own public office. This conduct involved "conducting business with" SRS and is sufficiently related to SRS to satisfy the standard described in *Yonan*.

---

charge slips did not act to lull the bank into acquiescence but rather increased the probability of detection. 414 U.S. at 403, 94 S.Ct. at 650. *See also United States v. Lane*, 474 U.S. 438, 452–53 n. 16, 106 S.Ct. 725, 734 n. 16, 88 L.Ed.2d 814 (1986).

Defendant also argues that the "in furtherance" requirement is not satisfied where the mailings are truthful statements which also would have been mailed if the services rendered were honest, citing *United States v. Kwiat*, 817 F.2d 440 (7th Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 284, 98 L.Ed.2d 245 (1987). However, in *Kwiat* the court emphasized that the mailings were not an essential part of the scheme because if they had not occurred, it would not

have made discovery of the scheme any more likely. 817 F.2d at 444. In doing so, the court reaffirmed that "'innocent' mailings may offend the statute if they are integral parts of a scheme to defraud." *Id.* at 443. Here, unlike in *Kwiat*, the government may be able to show that the mailings, by producing a lulling effect or by the other methods noted above, were an integral part of defendant's scheme.

10. Defendant Hutchinson has moved to strike Count Fifty-nine's reference to the Illinois official misconduct statute, Ill.Rev.Stat. ch. 38, § 33–3. Hutchinson's argument is rejected *supra* at 1284.

## B. Racketeering Activity and Predicate Acts

■ The indictment describes the alleged racketeering activity as consisting of:

(a) Multiple acts involving extortion under Title 18, United States Code, Section 1951, each of which also constituted and would constitute an act of bribery under Illinois State law, Chapter 38, Sections 33–1 and 33–3, including the unlawful solicitation, payment, and acceptance of bribes;

(b) Multiple acts of mail and wire fraud in violation of the federal mail and wire fraud statutes, Title 18, United States Code, Sections 1341 and 1343;

(c) Multiple acts of travel and use of interstate facilities in furtherance of unlawful activity in violation of Title 18, United States Code, Section 1952.

Count Fifty-nine further alleges that "(a)s a part of the conspiracy, the defendants would and did agree to the commission of multiple acts of racketeering on behalf of SRS to obtain and maintain contracts for SRS in exchange for the receipt of unlawful benefits for themselves." Finally, Count Fifty-nine incorporates by reference the overt acts alleged in Count One (the conspiracy count).

Defendant Hutchinson argues that these allegations do not sufficiently describe the predicate acts which defendant allegedly conspired to commit, relying on *United States v. Neapolitan*, 791 F.2d 489 (7th Cir.), *cert. denied*, 479 U.S. 939, 107 S.Ct. 421, 93 L.Ed.2d 371 (1986). In *Neapolitan*, the court held that a RICO conspiracy indictment must specify the predicate acts which the government plans to prove at trial. The court rejected the position of the government, which the court characterized as implying that "it would be sufficient ... for the indictment to state that the defendant engaged in various acts of bribery." 791 F.2d at 501. The court held that "crimes allegedly committed by or agreed to by [the defendant] that do not appear in the indictment cannot serve as predicate acts for the purpose of RICO." *Id.*

The Seventh Circuit again addressed the requirements of a RICO conspiracy indictment in *United States v. Garner*, 837 F.2d 1404 (7th Cir.1987), *cert. denied*, — U.S. —, 108 S.Ct. 2022, 100 L.Ed.2d 608 (1988). The court found sufficient an indictment which "recited the elements of the offense," "specified the nature of the illegal racketeering activity," and "included by reference the specific factual allegations contained in the individual RICO violations." 837 F.2d at 1412.

Although *Garner* is somewhat different from this case because factual allegations which were incorporated in the *Garner* RICO conspiracy count were contained in counts charging substantive RICO violations rather than a general conspiracy count, this distinction is not material. In this case, Count Fifty-nine incorporates the factual allegations of Count One, and this is sufficient, when combined with the other allegations of Count Fifty-nine, to "state all of the elements of the offense charged; ... inform the defendant of the nature of the charge so that he may defend himself; and ... enable the defendant to plead the judgment as a bar to any later prosecution for the same offense." 837 F.2d at 1412 (citation omitted). Unlike the position rejected in *Neapolitan*, the indictment does not merely allege that Hutchinson conspired to engage in various acts of racketeering, but rather it provides ample detail of the alleged illegal conduct.[11]

---

11. Hutchinson also asks that Count Fifty-nine be dismissed for failure to allege that he agreed to commit personally at least two predicate acts. Hutchinson points out that there is a split of authority regarding whether such an allegation is required, citing Justice White's dissent from denial of certiorari in *Adams v. United States*, 474 U.S. 971, 106 S.Ct. 336, 88 L.Ed.2d 321 (1985). Justice White noted that the First and Second Circuits require proof of an agreement to personally commit two acts of racketeering activity. *See United States v. Ruggiero*, 726 F.2d 913, 921 (2nd Cir.), *cert. denied*, 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984); *United States v. Winter*, 663 F.2d 1120, 1136 (1st Cir. 1981), *cert. denied*, 460 U.S. 1011, 103 S.Ct. 1249, 75 L.Ed.2d 479 (1983). However, as Hutchinson acknowledges, the Seventh Circuit rejected such a requirement in *United States v. Neapolitan*, 791 F.2d 489, 497 (7th Cir.), *cert. denied*, 479 U.S. 939, 107 S.Ct. 421, 93 L.Ed.2d 371 (1986). Dismissal on this ground is therefore inappropriate.

## C. Pattern of Racketeering

Defendant Finley moves to dismiss Count Fifty-nine on the ground that the charge does not allege a pattern of racketeering activity. To satisfy RICO's pattern requirement, the government must allege at least two acts of racketeering activity. 18 U.S.C. § 1961(5). Furthermore, the alleged racketeering activity must demonstrate "continuity and relationship" in order to constitute a pattern. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985). To satisfy the continuity element, "the predicate acts must be ongoing over an identified period of time so that they can fairly be viewed as constituting separate transactions, *i.e.*, 'transactions somewhat separated in time and place.'" *Medical Emergency Service Associates v. Foulke*, 844 F.2d 391, 395 (7th Cir.1988) (citations omitted). Many factors are relevant to the determination of whether a pattern exists, including "(1) the number and variety of predicate acts and the length of time over which they were committed; (2) the number of victims; (3) the presence of separate schemes; and (4) the occurrence of distinct injuries." *Jones v. Lampe*, 845 F.2d 755, 757 (7th Cir.1988). *See also United States v. Horak*, 833 F.2d 1235, 1240 (7th Cir.1987).

Finley argues that the predicate acts described in the indictment relate to a single scheme, the obtaining of public contracts for SRS. Finley further argues that the indictment alleges only one victim, the City of Chicago, and that the predicate acts occurred within the relatively short time frame of sixteen months. He concludes that the predicate acts do not demonstrate sufficient continuity to allege a pattern of racketeering activity.

The indictment alleges that the defendants engaged in numerous acts of bribery, extortion and fraud in an attempt to secure several public contracts for SRS. The fact that defendants sought to secure more than one contract for SRS makes it fair to describe the conduct as involving more than one scheme. That each scheme allegedly had a similar object does not make them all one scheme, but rather serves to show the relatedness which also is necessary to a pattern allegation. An examination of the totality of conduct described in the indictment, viewed in light of the factors identified in *Jones*, demonstrates that the pattern requirement is satisfied. The indictment in this case alleges attempts to secure several contracts through numerous predicate acts, committed over at least a sixteen-month time period. Although the number of victims is small, weighing against a finding of a pattern, this factor is outweighed by the large number of predicate acts, the continuity of these acts over time, and the existence of distinct schemes.

Finley contends that this case is controlled by *Elliott v. Chicago Motor Club, Inc.*, 809 F.2d 347 (7th Cir.1986), in which the court found the pattern requirement was not met even though the predicate acts occurred over a much longer time period than that alleged in this case. However, *Elliott* involved an attempt to reach a settlement concerning one claim which arose from a single accident. Here, in contrast, the indictment alleges several disparate courses of conduct.

Finley also argues that a pattern is not alleged because "multiple acts of mail fraud in furtherance of a single episode of fraud involving one victim and relating to one basic transaction cannot constitute the necessary pattern," quoting *Tellis v. U.S. Fidelity & Guaranty Co.*, 826 F.2d 477, 478 (7th Cir.1987). Here, however, the alleged conduct consists of much more than multiple acts of mail fraud, more than a single episode, and more than one transaction.

It is evident through a comparison of this case with other cases involving bribery of public officials that the pattern require-

---

Defendant McClain moves to dismiss Count Fifty-nine on the basis that it fails to allege predicate acts which constitute racketeering activity. His arguments are the same as those raised against the substantive mail and wire fraud offenses alleged in the indictment. Those arguments are rejected in Part VII, *supra*.

ment is satisfied here. In *United States v. Horak*, 833 F.2d 1235 (7th Cir.1987), the defendant was convicted on the basis of three predicate acts: (1) a $5,000 payment to a public official in connection with the obtaining of a garbage removal contract; (2) a $5,000 payment to a second public official regarding the same contract; and (3) a $2,000 payment to the first official with respect to a condominium dumpster problem which arose in connection with the contract and which was resolved in the defendant's favor. On appeal, the defendant argued that there was insufficient evidence that the third payment was a bribe and that the first two acts, without more, did not constitute a pattern of racketeering activity. The court noted that the "evidence indicated an ongoing relationship built on periodic monthly payments of bribes to [public] officials," and held that "the ongoing bribes of two public officials, even if pertinent only to a single ongoing service contract, may well establish a 'pattern' for purposes of section 1912(c)." 833 F.2d at 1240. The court further found that when the third payment was also taken into consideration, the pattern requirement was even more clearly met. The third payment occurred about two years after the initiation of the scheme, and that was "sufficient to show continuity and relationship—an ongoing scheme to bribe public officials to obtain and perform a service contract over a several year period." *Id.* at 1241.

In this case, the alleged schemes involved payments to numerous individuals in relation to more than one contract. The activities described in the indictment are much more extensive than those which formed the basis of the conviction in *Horak*, and the pattern requirement is therefore satisfied. *See also United States v. Yonan*, 622 F.Supp. 721, 728 (N.D.Ill.1985) (Shadur, J.) (pattern requirement satisfied where defendant was charged with seven acts of bribery over three-month period, with each payment made to the same person, for purpose of fixing ten criminal cases).

### D. Conduct or Participation

Defendant Hutchinson contends that Count Fifty-nine fails to allege sufficient facts to support a conclusion that he agreed to participate in the conduct of the enterprise through a pattern of racketeering. Resolution of Hutchinson's motion depends on the extent to which RICO requires participation in an enterprise. Hutchinson argues that RICO requires participation in the control or management of the enterprise. The government argues for a much broader interpretation of the participation element.

Hutchinson finds some support for his position in cases from other circuits. *See, e.g., Bennett v. Berg*, 710 F.2d 1361, 1364 (8th Cir.), *cert. denied*, 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983); *United States v. Mandel*, 591 F.2d 1347, 1375 (4th Cir.1979), *cert. denied*, 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980). The Seventh Circuit, however, has interpreted the participation element more broadly.

In *United States v. Horak*, 833 F.2d 1235 (7th Cir.1987), the court upheld the RICO conviction of the employee of a subsidiary of the enterprise. The court held:

> "[C]onduct" in section 1962(c) does not mean "control" or "manage," and, in any event, section 1962(c) also proscribes "participat[ion], directly or indirectly, in the conduct" of the affairs of the enterprise. To establish the relationship required by 1962(c) between racketeering activity and the affairs of the enterprise, this circuit has held that the government must show, first, that the defendant committed racketeering acts, second, that the defendant's position in or relation with the enterprise facilitated commission of the acts and third, that the acts had some effect on the enterprise.

833 F.2d at 1239 (citations omitted). Similarly, in *United States v. Garner*, 837 F.2d 1404 (7th Cir.1987), *cert. denied*, — U.S. —, 108 S.Ct. 2022, 100 L.Ed.2d 608 (1988), the court affirmed the RICO conviction of sewer inspectors employed by the Chicago Department of Sewers, which was charged to be the RICO enterprise. The court held:

RICO does not require that the defendants actually manage or operate the enterprise. This court's decisions have held squarely that a RICO defendant need not have a supervisory position in order to violate section 1962(c). RICO only requires that a defendant "use one's position in the enterprise to line one's pocket through a pattern of racketeering activity."

837 F.2d at 1420 (citations omitted).

 Although *Garner* and *Horak* involved defendants who were actually employed by the enterprise or a subsidiary of the enterprise, such employment is not necessary to meet the participation element, as evidenced by the Seventh Circuit's reference to the defendant's "position in *or relation with* the enterprise." *Horak*, 833 F.2d at 1239 (emphasis added). In this case, defendants allegedly conducted business with the enterprise in an ongoing scheme to secure public contracts for the enterprise through acts of racketeering. This relationship between defendants and the enterprise allegedly facilitated the commission of the acts of racketeering, and those acts allegedly had an effect on the enterprise. These allegations are supported by the factual accusations in the indictment. The indictment thus satisfies the three-pronged test set forth in *Horak* and sufficiently alleges an agreement to participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity.

The motions to dismiss Count Fifty-nine are therefore denied.

## IX. MOTIONS TO DISMISS FALSE STATEMENT COUNTS

### A. *"Exculpatory No" Doctrine*

 18 U.S.C. § 1001 prohibits the making of false statements or the concealment of material facts in matters within the jurisdiction of United States governmental departments or agencies. Count Sixty-seven charges defendant Hutchinson with violating 18 U.S.C. § 1001 by making false statements to the FBI. Specifically, during an interview with FBI agents, Hutchinson allegedly stated falsely that he knew nothing about payoffs to any city official relating to the awarding of contracts, that he was not acquainted with anyone from SRS, that he had never met Michael Raymond, and that he had never received or been offered money from SRS.

Hutchinson has moved to dismiss this count on the basis of the "exculpatory no" doctrine, contending that § 1001 does not apply to false, unsworn denials made to a federal investigator. The exculpatory no doctrine has been applied to varying extents in different circuits. The Ninth Circuit's approach appears to be the broadest. In *United States v. Bedore*, 455 F.2d 1109 (9th Cir.1972), the court held that Congress never intended the literal application of the statute, under which "virtually any false statement, sworn or unsworn, written or oral, made to a Government employee could be penalized as a felony." 455 F.2d at 1110. The court held that the giving of a false name to an FBI agent who was attempting to serve the defendant with a subpoena was not within the scope of the statute. The Ninth Circuit applies the exculpatory no doctrine where (1) the false statement is "unrelated to a claim to a privilege or a claim against the government," (2) the statement is made in "respon[se] to inquiries initiated by a federal agency or department," and (3) the statement does not "impair the basic functions entrusted by law" to the agency. *United States v. Medina de Perez*, 799 F.2d 540, 544 n. 5 (9th Cir.1986). The second prong of this test is met only where the agency's inquiries involved an investigative function rather than a "routine exercise of administrative responsibility" and where a truthful answer would have incriminated the defendant. *Id.* at 544. The Fifth Circuit described the exculpatory no doctrine as applying to "a generally negative and exculpatory response made by a subject of a criminal investigation in reply to questions directed to him by investigating officers." *United States v. Lambert*, 501 F.2d 943, 946 (5th Cir.1974). *See also United States v. Tabor*, 788 F.2d 714 (11th Cir.1986).

■ The Seventh Circuit has recognized the application of the exculpatory no doctrine only in limited circumstances. In *United States v. King,* 613 F.2d 670, 674 (7th Cir.1980), the court stated, "the 'exculpatory no' doctrine [is] ... a very limited exception to Section 1001.... [T]he doctrine is limited to simple negative answers, without affirmative discursive falsehood, under circumstances indicating that the defendant is unaware that he is under investigation and is not making a claim against, or seeking employment with the government." 613 F.2d at 674 (citations omitted). *See also United States v. Isaacs,* 493 F.2d 1124, 1156–58 (7th Cir.), *cert. denied,* 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974). *Cf. United States v. Rodgers,* 466 U.S. 475, 104 S.Ct. 1942, 80 L.Ed.2d 492 (1984) (holding § 1001 applicable to FBI agents and interpreting § 1001 very broadly). Here, defendant is charged not with making simple negative answers, but with stating affirmative falsehoods. Furthermore, the exculpatory no doctrine can be raised only as an affirmative defense, requiring a review of the government's evidence at trial, and it is thus not grounds for a motion to dismiss. *United States v. Antonucci,* 663 F.Supp. 243, 245 (N.D.Ill. 1987).[12] The exculpatory no doctrine, therefore, does not provide for dismissal of Count Sixty-seven.

### B. Duplicity

Count Sixty-six charges defendant Humes with violating 18 U.S.C. § 1001 by falsely stating in an interview with FBI agents that she had never heard of SRS, that she thought Michael Raymond was a relative or friend of unindicted co-conspirator Raymond Akers, and that she had never been offered a bribe. Humes moves to dismiss this count as duplicitous.

■ Duplicity is the joinder of two or more offenses in one count. *See United States v. Berardi,* 675 F.2d 894, 897 (7th Cir.1982); *United States v. Pavloski,* 574 F.2d 933, 936 (7th Cir.1978). The prohibi-

tion of duplicitous indictments stems from four distinct concerns: (1) the failure to provide the defendant with adequate notice of the charges; (2) the possibility that the defendant will be subjected to prejudicial evidentiary rulings at trial; (3) trial records which are inadequate to support subsequent double jeopardy claims; and (4) the risk of a non-unanimous jury verdict. *United States v. Kimberlin,* 781 F.2d 1247, 1250 (7th Cir.1985), *cert. denied,* 479 U.S. 938, 107 S.Ct. 419, 93 L.Ed.2d 370 (1986).

■ Not every count which alleges more than one instance of illegal conduct is duplicitous:

> A count is not duplicitous ... if it simply charges the commission of a single offense by different means. Rule 7(c) provides that "[i]t may be alleged in a single count that the means by which the defendant committed the offense are unknown or that he committed it by one or more specified means." This rule necessarily contemplates that two or more acts, each one of which would constitute an offense standing alone, may be joined in a single count without offending the rule against duplicity.
>
> The line between multiple offenses and multiple means to the commission of a single continuing offense is often a difficult one to draw. The decision is left, at least initially, to the discretion of the prosecution.

*Berardi,* 675 F.2d at 897–98 (citations omitted). Indeed, Rule 7 was specifically "intended to eliminate the use of multiple counts for the purpose of alleging the commission of the offense by different means or in different ways." *United States v. Kramer,* 711 F.2d 789, 797 (7th Cir.), *cert. denied,* 464 U.S. 962, 104 S.Ct. 397, 78 L.Ed.2d 339 (1983), quoting Fed.R.Crim.P. 7 Advisory Committee Note.

■ In *Berardi,* the defendant was charged with obstruction of justice for corruptly endeavoring to influence a witness's

---

**12.** Hutchinson also claims that application of 18 U.S.C. § 1001 to the conduct specified in Count Sixty–Seven would violate the First Amendment of the United States Constitution. However,

this argument ignores the principle that "there is no constitutional value in false statements of fact." *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 340, 94 S.Ct. 2997, 3007, 41 L.Ed.2d 789 (1974).

grand jury testimony. The same count described three distinct episodes of such behavior within a four-month period. The Seventh Circuit affirmed the district court's denial of the defendant's motion to dismiss on duplicity grounds:

> [T]he three acts of obstruction ... could have constituted independent violations ... and could have been charged in separate counts. Had the government taken this route, of course, Berardi would have been subjected to multiple statutory penalties. The government, however, declined this opportunity to cumulate these punishments and the indictment, fairly interpreted, charges Berardi with a continuing course of conduct, during a discrete period of time, to influence [the witness's] grand jury testimony.
>
> We believe that the government's characterization of the facts as a single continuing offense was a fair one under the circumstances....

*Berardi*, 675 F.2d at 898. The facts in this case are very similar to those in *Berardi*, and indeed present an even weaker argument for duplicity because the alleged statements were all made on the same date. *See also United States v. Edmondson*, 410 F.2d 670, 673 n. 6 (5th Cir.) (single count could properly charge several false statements in same perjury count), *cert. denied*, 396 U.S. 966, 90 S.Ct. 444, 24 L.Ed.2d 430 (1969).

Of the four concerns which underlie the prohibition of duplicitous indictments, *see supra* at 1294, only the fourth concern is raised by the charge in this case. The charge could result in the jurors agreeing that defendant violated the statute but disagreeing as to which of the statements she actually made. The government suggests that this possibility may be avoided through an appropriate jury instruction which will allow the jury to find the defendant guilty only upon a unanimous agreement as to the means by which defendant committed the offense. The government refers, by analogy, to the Eleventh Circuit's pattern jury instruction requiring the jurors to agree unanimously as to which predicate offenses were committed. This solution will adequately safeguard defendant's interests. Accordingly, the Count will not be dismissed on duplicity grounds.

## X. MOTION TO COMPEL AN ELECTION

■ Count One charges a conspiracy to commit acts in violation of the mail and wire fraud statutes and the Hobbs Act. Count Fifty-nine charges a conspiracy to commit acts in violation of RICO. Defendant Humes has moved to compel the government to elect between Counts One and Fifty-nine, arguing that they allege the identical offense and noting that Count Fifty-nine incorporates by reference all of the 284 overt acts alleged in Count One. Humes relies on *Braverman v. United States*, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942), which held that a defendant could not be charged with two separate crimes where the charges concerned the same conspiracy but described different objectives of that conspiracy.

In *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), the Supreme Court set forth the test which is still used in determining whether a defendant may be given separate punishments for different charges as "whether each provision requires proof of a fact which the other does not." *See also Albernaz v. United States*, 450 U.S. 333, 337, 101 S.Ct. 1137, 1141, 67 L.Ed.2d 275 (1981); *Andrews v. United States*, 817 F.2d 1277, 1281 (7th Cir.), *cert. denied*, — U.S. ——, 108 S.Ct. 166, 98 L.Ed.2d 120 (1987). That test is satisfied here. Count One, charging a conspiracy in violation of 18 U.S.C. § 371, requires proof of an overt act, an element which is not required by 18 U.S.C. § 1962. *See United States v. Tripp*, 782 F.2d 38, 41 (6th Cir.), *cert. denied*, 475 U.S. 1128, 106 S.Ct. 1656, 90 L.Ed.2d 199 (1986); *United States v. Coia*, 719 F.2d 1120, 1123 (11th Cir.1983), *cert. denied*, 466 U.S. 973, 104 S.Ct. 2349, 80 L.Ed.2d 822 (1984); *United States v. Barton*, 647 F.2d 224, 237 (2d Cir.), *cert. denied*, 454 U.S. 857, 102 S.Ct. 307, 70 L.Ed.2d 152 (1981). Count Fifty-nine, in turn, requires proof of association with an enterprise and a pattern of racketeering,

elements which are not required by 18 U.S.C. § 371. *Cf. United States v. Love*, 767 F.2d 1052, 1061–62 (4th Cir.1985) (defendant could be convicted and sentenced for both RICO and continuing criminal enterprise, 21 U.S.C. § 848), *cert. denied*, 474 U.S. 1081, 106 S.Ct. 848, 88 L.Ed.2d 890 (1986).

Humes argues that this case is controlled by *Jeffers v. United States*, 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977), which held that a defendant could not be punished separately for engaging in a drug conspiracy, 21 U.S.C. § 846, and engaging in a continuing criminal enterprise, 21 U.S.C. § 848. However, in *Jeffers* the Court assumed that § 846 is a lesser included offense of § 848 under the *Blockburger* test. Here, in contrast, each statute does require proof of an element that the other does not. The government is therefore entitled to proceed on both counts.

## XI. MOTIONS FOR SEVERANCE

■ Defendant Humes has moved for a severance of Counts Sixty through Sixty-seven from the rest of the indictment.[13] Counts Sixty, Sixty-one, Sixty-two and Sixty-four concern alleged violations of the tax laws by defendants McClain and Adams.[14] Counts Sixty-three, Sixty-five, Sixty-six and Sixty-seven charge defendants Adams, Du-Brock,[15] Humes and Hutchinson, respec-tively, with making false statements to the FBI in violation of 18 U.S.C. § 1001.

Two or more offenses may be charged in the same indictment if they "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Fed.R.Crim.P. 8(a). Even where joinder is appropriate under Rule 8(a), a severance may be ordered if the joinder unduly prejudices the defendant. Fed.R.Crim.P. 14. Humes' motion for severance thus requires the application of a two-step test which first examines the propriety of joinder and second, if joinder is appropriate, examines the prejudice to the defendant.

With the possible exception of Count Sixty-one,[16] the counts in question all are "based on acts constituting parts of a common scheme or plan." *United States v. Shelton*, 669 F.2d 446, 460 (7th Cir.), *cert. denied*, 456 U.S. 934, 102 S.Ct. 1989, 72 L.Ed.2d 454 (1982). The false statement counts concern statements made by defendants in attempts to exculpate themselves with respect to the other charges in the indictment. The tax counts concern the failure to report income obtained through the other acts charged in the indictment. These types of charges have repeatedly been held proper for joinder. *See United States v. Anderson*, 809 F.2d 1281, 1288

13. Humes filed two separate motions. One seeks a severance of Counts Sixty through Sixty-seven, and the other seeks a severance solely of Count Sixty-six, the only one of these Counts in which she is named. The motions shall be treated together.

14. Count Sixty charges McClain with understating his 1984 income on his 1985 tax return. Count Sixty-one charges McClain with concealment of assets. Count Sixty-two charges Adams with understating his 1984 income on his 1985 tax return. Count Sixty-four charges Adams with understating his 1985 income on his 1986 tax return.

15. DuBrock has pleaded guilty, so Count Sixty-five is no longer in issue.

16. Count Sixty-one charges McClain with concealment of "settlement proceeds in excess of $400,000 upon which levy was authorized by Section 6331 of the Internal Revenue code." McClain describes this Count as relating to a medical malpractice settlement. (Motion to Dismiss Indictment for Governmental Misconduct, at 25.) The government does not discuss this count specifically, but merely states that "the tax charges are based on the failure to report bribe income allegedly earned as a result of the conduct charged in this case." (Government's Response to Motion of Defendant Marian Humes for a Severance of Counts Sixty to Sixty-seven, at 1.) None of the parties has sufficiently addressed Count Sixty-one to permit the Court to rule on whether it must be severed. The Court therefore denies the severance motion with respect to Count Sixty-one *without prejudice*. The Court has granted McClain's motion for a bill of particulars with respect to this Count. *See supra* at 1278–79. Defendants may bring a new motion to sever Count Sixty-one within fourteen days of receiving the bill of particulars. The government's response is due fourteen days thereafter.

(7th Cir.1987); *United States v. Wilson*, 715 F.2d 1164, 1171 (7th Cir.), *cert. denied*, 464 U.S. 986, 104 S.Ct. 434, 78 L.Ed.2d 366 (1983); *Shelton*, 669 F.2d at 460; *United States v. Isaacs*, 493 F.2d 1124, 1159 (7th Cir.), *cert. denied*, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974).

 Furthermore, the joinder of these offenses does not unduly prejudice defendants. In considering a severance motion, the Court must balance the possible prejudice to the defendant against considerations of judicial economy and efficiency. *See Isaacs*, 493 F.2d at 1160. In this case the interests of economy and efficiency are substantial. The evidence required to try the tax and false statement counts would duplicate much of the evidence required to try the other counts. Furthermore, the prejudice to defendants may be minimized by the use of appropriate jury instructions. *See Shelton*, 669 F.2d at 461; *Isaacs*, 493 F.2d at 1160. The Court therefore concludes that a severance is not appropriate, with the possible exception of Count Sixty-one.

### XII. KNOX'S MOTION TO DISMISS ENTIRE INDICTMENT

Defendant Knox moves to dismiss the entire indictment on the basis that it fails to state a claim against him. Assuming the truth of all of the factual allegations, Knox contends that the indictment fails to describe any unlawful activity on his part.

Knox's motion is brought in very conclusory terms, leaving the Court to speculate as to the specific grounds of his request. He appears to claim that, as a paid consultant for SRS, he was entitled to lobby the City of Chicago to award contracts to SRS. The indictment, however, charges him in great detail with using false statements and conspiring with public officials to secure contracts for SRS through fraud and corruption. The allegations of the indictment are sufficient to state a claim against Knox.

### XIII. CONCLUSION

For the reasons stated above, defendants' motions to dismiss, motions for a bill of particulars, motion to compel an election, and motions for severance are denied, with the exception of McClain's motion for a bill of particulars, which is granted in part.